# EXHIBIT A

## Part 4

1317198, payment on which was subject to a Personal Guaranty contract executed by defendant. The Agreement and the executed Personal Guaranty Contract ("Personal Guaranty") with related Assignment(s) are attached hereto as Exhibit A.

5.    The Agreement provides that in the event of a default, Plaintiff may require immediate payment of all amounts then due plus the unpaid balance of the remaining monthly payments for the original term of the Agreement.

6.    Defendant, by execution of a Personal Guaranty contract, unconditionally guaranteed all of the Lessee's obligations to the plaintiff under the Agreement, including the basic monthly payment to the plaintiff of $49.00 for a period of 48 months, plus plaintiff's attorney's fees and legal costs incurred in enforcing the Agreement.

7.    SE UNDERGROUND UTILITIES CONTRACT INC defaulted by failing to make its required monthly payments due under the Agreement on 8/15/2003. Prior to its default, SE UNDERGROUND UTILITIES CONTRACT INC made payments under the Agreement and was properly credited for an amount totaling $98.00.

8.    As a result of the above failure to make scheduled payments pursuant to the Agreement, Plaintiff declared immediately due and payable all accrued and unpaid monthly payments in the total amount of $2,254.00, plus attorney's fees, as provided for under the Agreement with interest accruing from date of default.

9.    Pursuant to the executed Personal Guaranty, Demand has been made upon Defendant, in their capacity as Personal Guarantor, for the above balance due Plaintiff, but defendant has failed to pay and still continues to refuse to pay said balance due and owing under the Personal Guaranty.

### COUNT ONE: BREACH OF CONTRACT (BREACH OF PERSONAL GUARANTY)

10.    Plaintiff realleges and incorporates all allegations set forth above in paragraphs 1-9 as though fully alleged herein.

11.    As a result of Lessee's failure to make the payment due on 8/15/2003 and each and every monthly payment due thereafter, as specified in the Agreement, there has been a default under the Agreement and the contract has been breached.

12.    By reason of the foregoing, there is presently due and owing from the Lessee to Plaintiff the remaining unpaid balance under the Agreement of $2,254.00, plus an amount of $1,056.29 accounting for prejudgment interest of 5 percent accruing thereon from 8/15/2003 pursuant to 815 ILCS 205/1 *et. seq.* for a total amount claimed of $3,310.29.

13. Accordingly, by reason of the Defendant's obligations under the executed Personal Guaranty, there is presently due and owing to Plaintiff from Defendant, as the signatory of the Personal Guaranty contract, the total sum of $3,310.29.

## COUNT TWO: RECOVERY OF ATTORNEY'S FEES PURSUANT TO AGREEMENT

14. Plaintiff realleges and incorporates all allegations set forth above in paragraphs 1-13 as though fully alleged herein.

15. Defendant unconditionally guaranteed all obligations to the plaintiff under the Agreement, including payment of plaintiff's attorney's fees and legal costs incurred in enforcing the Agreement.

16. By reason of defendant's unconditional guaranty to pay plaintiff's attorney's fees and legal costs incurred in enforcing the Agreement, there is due and owing from the Defendant to Plaintiff attorney's fees in a sum no less than $350.00 plus costs and fees incurred in bringing the present action.

WHEREFORE, plaintiff demands judgment against defendant as follows:

A. For Count One against defendant, the sum of $3,310.29;

B. For reasonable attorney's fees in a sum no less than $350.00;

C. Possession of any equipment subject to the Agreement if any such equipment is remaining in Defendant's possession and;

D. Costs and Fees and;

E. Any such other and further relief as this Court may deem just and proper.

Respectfully submitted,

PUSHPIN HOLDINGS LLC

PLAINTIFF

By:

_____
One of Plaintiff's Attorneys

Law Offices of Ari R. Madoff, P.C. (Firm No. 48674)
Attorneys for Pushpin Holdings LLC
312-379-9529(p)312-980-6819 (f)
Mailing Address:
Post Office Box 64777
Chicago, IL 60664-0777

RE:

| PUSHPIN HOLDINGS LLC | ) | State of NY |
|---|---|---|
| | ) SS | |
| v. | ) | County of New York |
| MICHAEL B JOHNSON, A/K/A MICHAEL BLAINE JOHNSON | | |

## VERIFICATION AND AFFIDAVIT OF CLAIM
### VERIFICATION (735 ILCS 5/1-109)

I, Alisha Rios, declare under penalties as provided by law pursuant to § 1-109 of the IL Code of Civil Procedure:

that I am the Executive Legal Administrator of the Plaintiff herein.;

that I have read the foregoing Verified Complaint and know the contents thereof;

and that to the best of my knowledge all of the statements in the foregoing Verified Complaint are true and correct; except as to matters therein stated to be made upon information and belief (as to which I believe such statements are true).

AFFIDAVIT

Further, I, Alisha Rios, declare under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, being first duly sworn upon oath or affirmation, depose and state as follows:

1. That I am duly authorized agent and Executive Legal Administrator of Plaintiff in the above captioned matter and I am authorized and qualified with full authority to make this affidavit as a representative of the Plaintiff herein. In performing my duties on behalf of Pushpin Holdings LLC, I am familiar with and have access to the books and records of the Plaintiff herein.

2. That the Plaintiff holds all rights, title and interest of the original Lessor and is the owner and current creditor-holder of the Agreement, original Lease #0880531060000, assigned No. 1317198 and the executed Personal Guaranty subject of this action; having purchased the account in the ordinary course of business in good faith and for good and valuable consideration from the Original holder or its assignee/successor in interest. The Document(s) of Assignment attached as exhibit(s) to the Complaint are true & correct copies that were kept in the ordinary course of business and pertain to the acquisition of the written agreement(s), obligation(s) and guaranty(s) subject to the present action.

3. That Plaintiff maintains, in the regular course of its business, computer records on which entries are made by a person with direct knowledge of the information therein or knowledge based on documents provided by the original holder and/or its assignee to Plaintiff which have been incorporated into Plaintiff's books, records and electronic records.

4. That Defendant has defaulted in his/her payment obligations to the original holder and/or its assigns and the balance due and owing to the Plaintiff as of the date hereof is $3,310.29 which balance is comprised of $2,254.00 plus prejudgment interest of $1,056.29, having accrued at 5 percent per annum pursuant to statute as of the date hereof. The costs and the reasonable attorneys fees reflected in the attached verified complaint at law are currently due and owing Plaintiff pursuant to the Agreement. The account has been credited for all payments and credits due.

5. The Exhibits attached to the Complaint and/or this Affidavit are true & accurate copies, which were kept in the ordinary course of business and properly reflect Defendants obligations to Plaintiff under the subject Agreement(s) and/or Contracts and Guarantees.

6. If called as a witness I could competently testify to the matters stated in this affidavit.

The above Verification and Affidavit Sworn to before me this 6/10/2013

Alisha Rios
Title: Executive Legal Administrator

LUISA TATBAK
NOTARY PUBLIC, STATE OF NEW YORK  NO. 01TA6208843
QUALIFIED IN KINGS COUNTY   COMMISSION EXPIRES JULY 13, 2013

**EXHIBIT D, Page 6 of 11**   LSE. 1317198

# CIT

223 N. Michigan Ave., Suite 1600
Chicago, IL 60601-5519 · (312) 460-5600 · Fax (312) 540-6753

## NON-CANCELLABLE LEASE

| | LEASE NUMBER |
|---|---|

| | VENDOR |
|---|---|
| LEGAL NAME OF LESSEE ("LESSEE") | EFS National Bank |
| S.E. UNDERGROUND UTILITIES CONTRACT INC | ADDRESS |
| | 2575 Horizon Lake Road |

| BILLING ADDRESS | ☐ CORPORATION ☐ PROPRIETORSHIP ☐ PARTNERSHIP | | |
|---|---|---|---|
| 520 WOODLAWN AVE | Years in Business: 0 | | |

| CITY | STATE | ZIP | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| MT. HOLLY | NC | 28120 | | TN | 38134 |

| | PHONE NO. |
|---|---|
| | (901) 235-7675 |

| EQUIPMENT MANUFACTURER/SOFTWARE LICENSOR | MODEL/LICENSE AGREEMENT | SERIAL/REGISTRATION NUMBER |
|---|---|---|
| Hiperion Ice 5700 | | |

LOCATION OF Equipment/Software Address (No. & street, city, state, zip) if different from above

520 WOODLAWN AVE · MT. HOLLY · NC · 28120

The equipment ("Equipment") and the software and related license agreement(s) ("License Agreement(s)" and collectively with the software, the "Software") described above shall be referred to collectively as the "Property."

| SCHEDULE OF PAYMENTS | | PAYABLE AT SIGNING OF THE LEASE | |
|---|---|---|---|
| TERM IN MONTHS | BASE MONTHLY PAYMENT OF | ☐ FIRST AND LAST MONTHLY PAYMENT | $ |
| 48 | $ 49.00 PER MONTH | ☐ FIRST MONTHLY PAYMENT | $ |
| COMMENCEMENT DATE | PLUS TAXES AND OTHER FEES AS DESCRIBED | ☐ OTHER | $ |
| | IN THE TERMS AND CONDITIONS BELOW | TOTAL $ | |

### TERMS AND CONDITIONS (See other side for additional Terms and Conditions)

1. NOTWITHSTANDING ANY AMOUNTS WHICH MAY BE PAID BY LESSOR TO VENDOR OR ANY AGENT OF VENDOR, LESSEE UNDERSTANDS AND AGREES THAT NEITHER VENDOR NOR ANY AGENT OF VENDOR IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE. THEIR REPRESENTATIONS SHALL IN NO WAY AFFECT LESSEE'S OR LESSOR'S RIGHTS AND OBLIGATIONS AS HEREIN SET FORTH.

2. NON-CANCELLABLE LEASE. THIS LEASE CANNOT BE CANCELLED BY LESSEE DURING THE TERM HEREOF.

3. DISCLOSURE OF INFORMATION. Lessee and Guarantor(s) expressly authorize Lessor or its agents or assigns continuing authority to conduct credit checks and background investigations concerning Lessee and Guarantor(s) and has the right to report late payments and defaults to credit agencies as deemed appropriate by Lessor. Disputes or inaccuracies regarding information sent to credit agencies should be sent to Newcourt Financial USA, Inc. at the address on the top of this lease.

4. AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL OF PAYMENTS. I, the undersigned Lessee in the capacity set forth below, hereby authorize CIT Financial USA, Inc. or its designee, successor-or-assign (hereinafter "Lessor") to automatically withdraw my monthly rental payment and any amounts, including any and all taxes or other charges now due or hereafter incurred, directly by debit entries to my account at the financial institution (hereinafter "Bank") evidenced on the check copy provided, of such other Bank that I may be used by me from time to time. As set forth in paragraph 16, in the event of default of my obligations hereunder, I authorize the Lessor to debit my account for the full amount due under the Lease. A rental payment (whether paid by debit or other means) that is not honored by my bank for any reason will be subject to a $10.00 service fee imposed by Lessor, the amount of which may be debited from my account. Further, I authorize my Bank to accept and to charge any debit entries initiated by Lessor to my account. This authorization is to remain in full force and effect until Lessor has received written notice from me of its termination in such time and in such manner as to afford Lessor a reasonable opportunity to act.

BANK FIRST GASTON BANK · ROUTING · ACCOUNT

### CERTIFICATE OF ACKNOWLEDGMENT AND ACCEPTANCE OF LEASED PROPERTY

I HAVE READ AND AGREE TO THE TERMS WHICH APPEAR ON BOTH SIDES OF THIS LEASE DOCUMENT. I represent that this Property is being leased for business and/or professional purposes and agree that under no circumstances shall this Lease be construed as a consumer contract. I acknowledge receipt of a copy of this Lease Agreement, with all lease terms filled in, and acknowledge and agree that I shall be deemed to have unconditionally accepted the Property you have leased me under our Lease Agreement, particulars of which are given above. Lessee's signature herein authorizes Lessor to verify/verify by telephone with representative of Lessee on a verification certificate, the date and time of such verification, the terms and conditions of the Lease, the type and make of the Property under the Lease, that all necessary installation has been completed and the Property is in good operating order and in all respects satisfactory to Lessee; and that the monthly rental payment will be automatically debited from the Lessee's verified account number and designated account.

| ACCEPTED BY LESSOR | ACCEPTED BY LESSEE: S.E. UNDERGROUND UTILITIES CONTRACT INC. |
|---|---|
| CIT Financial USA | LESSEE (FULL LEGAL NAME) |
| | LESSEE #1 | LESSEE #2 (if applicable) |
| | X Signature | X Signature |
| | Print Name MICHAEL R JOHNSON | Print Name |
| Authorized Signature | Title VP Date 04/09/2003 | Title Date |
| Title VP Date 5-23-3 | Witness Signature X | |

### PERSONAL GUARANTY

To induce Lessor to enter into this Lease, the undersigned unconditionally guarantees to Lessor the prompt payment when due of all of Lessee's obligations to Lessor under the Lease. Lessor shall not be required to proceed against Lessee or the Property or enforce any other remedy before proceeding against the undersigned. The undersigned agrees to pay all attorney's fees and other expenses incurred by Lessor by reason of default by the Lessee or the undersigned consents to any extensions or modifications granted to Lessee and the release and/or compromise of any obligation of Lessee or any other obligors, and guarantees without in any way releasing the undersigned from its obligations hereunder. This is a continuing Guaranty and shall not be discharged or affected by death of the undersigned, shall bind the heirs, administrators, representatives, successors and assigns, and may be enforced by or for the benefit of any assignee or successor of Lessor. The undersigned agrees and consents to the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in said county shall have jurisdiction and shall be the proper venue for the determination of all controversies and disputes arising hereunder. The undersigned agrees and consents that the service of process by registered or certified mail will be sufficient to obtain jurisdiction.

| Guarantor Signature #1 | Guarantor Signature #2 |
|---|---|
| X | X |
| (No Titles Allowed) | (No Titles Allowed) |
| Home Address 4029 MOUNTAIN VIEW RD | Home Address |
| City GASTONIA State NC Zip 28054 | City State Zip |
| Home Phone # (704) 922-9335 S.S.# | Home Phone # S.S.# |
| Witness Signature X | Date 04/09/2003 |

We have written this Lease in plain language because we want you to fully understand its terms. Please read your copy of this Lease carefully and feel free to ask us any questions you may have about it. We use the words you and your to mean the Lessee indicated above. The words we, us, and our refer to the Lessor indicated above and any assignee thereof.

REV. EFSCS 1/01 · WHITE - ORIGINAL · YELLOW - FILE · PINK - LESSEE COPY · GREEN - FILE · CANCEL: GD, KS, TX, PA

## EXHIBIT D, Page 7 of 11

5. NO WARRANTIES. The Property is subject to any warranties made by the manufacturer of the Equipment or licensor of the Software ("Licensor") and any limitation thereof. The Property is leased "AS IS" and LESSOR IS NOT LIABLE FOR THE PERFORMANCE OF THE EQUIPMENT, THE SOFTWARE, THE LICENSOR OR ANY OTHER PARTY'S FAILURE TO PROVIDE SERVICE. YOU ACKNOWLEDGE THAT WE DID NOT MANUFACTURE OR LICENSE THE PROPERTY NOR DID WE SELECT IT. WE DID NOT REPRESENT THE MANUFACTURER OR THE LICENSOR AND YOU SELECTED THE PROPERTY BASED UPON YOUR OWN JUDGEMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. YOU AGREE THAT, REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR, AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR, ANY DAMAGES, WHETHER LOST PROFITS, LOST DATA, CONSEQUENTIAL, DIRECT, SPECIAL, PUNITIVE OR INDIRECT, RELATING TO THE PROPERTY. YOU AGREE THAT, IN THE EVENT OF A BREACH OR DEFAULT UNDER THE LICENSE AGREEMENT, LESSEE'S SOLE REMEDY SHALL BE AGAINST THE LICENSOR. We hereby notify you that you may have rights under the supply contracts of the License Agreement, and that you may contact the supplier or the Licensor for a description of those rights or any warranties.

6. TERM AND RENT. The Lease term shall commence as of the date that the Lease is accepted by us ("the Commencement Date"), and shall continue until your obligations under the Lease shall have been fully performed. Each installment of rent shall be payable monthly in advance, the first such payment being due on the date you sign this Lease, or at such later time as agreed to by us, and the second payment shall be due the following month on the day of the month we designate in writing (hereinafter "Payment Day"), and subsequent payments will be due on the Payment Day of each successive month until the balance of the rent and any additional rent or fees chargeable to you under this Lease have been paid in full. All payments of rent shall be made to us at the address set forth herein or such other address that we may designate in writing. YOUR OBLIGATION TO PAY SUCH RENTALS SHALL BE ABSOLUTE AND UNCONDITIONAL AND IS NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER, INCLUDING ANY ACTION BY LICENSOR OR ANY OTHER THIRD PARTY. You hereby authorize us to insert the serial numbers and other identification data of the Property when determined by us and dates or other omitted factual matters. If a security deposit is indicated above, the same shall be held by us to secure the faithful performance of the terms of the Lease and returned or applied in accordance with Paragraph 18 hereof.

7. ASSIGNMENT. (a) WE MAY ASSIGN OR TRANSFER THIS LEASE OR OUR INTEREST IN THE PROPERTY WITHOUT NOTICE TO YOU. Any assignee of ours shall have all of the rights, but none of the obligations, of ours under this Lease and you agree that you will not assert against any assignee of ours any defense, counterclaim or offset that you may have against us. (b) YOU SHALL NOT ASSIGN OR IN ANY WAY DISPOSE OF ALL OR ANY PART OF YOUR RIGHTS OR OBLIGATIONS UNDER THIS LEASE OR ENTER INTO ANY SUBLEASE OF ALL OR ANY PART OF THE PROPERTY WITHOUT OUR PRIOR WRITTEN CONSENT.

8. TITLE, QUIET ENJOYMENT. We shall at all times retain title to the Property. All documents of title and evidence of delivery shall be delivered to us. You hereby authorize us, at your expense, to cause this Lease, or any statement or other instrument in respect to this Lease showing our interest in the Property, including Uniform Commercial Code Financing Statements, to be filed or recorded, and refiled and rerecorded, and grant us the right to execute your name thereto. You agree to execute and deliver any statement or instrument requested by us for such purpose, and agree to pay or reimburse us for any filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. So long as you are not in default under any of the terms in this Lease, we agree that we shall not interfere with your quiet use and enjoyment of the Property.

9. CARE, USE AND LOCATION. You shall maintain the Equipment in good operating condition, repair and appearance, and protect the same from deterioration other than normal wear and tear; shall use the Property in the regular course of your business; shall not make any modification, alteration or addition to the Property without our written consent, which shall not be unreasonably withheld; shall not so affix the Equipment to realty as to change its nature to real property; and shall not remove the Property from the location shown herein without our written consent, which shall not be unreasonably withheld.

10. NET LEASE; TAXES. You intend the rental payments hereunder to be net to us, and you agree to pay all sales, use, excise, personal property, stamp, documentary and ad valorem taxes, license and registration fees, assessments, fines, penalties and similar charges imposed on the ownership, possession or use of the Property during the term of this Lease; shall pay all taxes (except our Federal or State net income taxes) imposed on you or us with respect to the rental payments hereunder or the ownership of the Property; and shall reimburse us upon demand for any taxes paid by or advanced by us. Unless otherwise agreed to in writing, you shall file personal property tax returns with respect to the Property.

11. INDEMNITY. You shall and do hereby agree to indemnify and save us, our agents, servants, successors, and assigns harmless from any and all liability, damage or loss, including reasonable attorney's fees, arising out of the ownership, selection, possession, leasing, operation, control, use, condition (including but not limited to latent and other defects, whether or not discoverable by you), maintenance, delivery and return of the Property. The indemnity shall continue in full force and effect notwithstanding the termination of the Lease.

12. INSURANCE. You shall keep the Equipment insured against all risks of loss or damage from any cause whatsoever for not less than the full replacement value thereof. You shall carry public liability insurance, both personal injury and property damage, covering the Equipment. All such insurance shall be in form and with companies satisfactory to us and shall name us and our Assignee as Loss Payee as our interest may appear with respect to property damage coverage and as additional insured with respect to public liability coverage. You shall pay the premiums for such insurance and upon our request deliver to us satisfactory evidence of insurance coverage required hereunder. The proceeds of such insurance payable as a result of loss or damage to any item of Equipment shall be applied to satisfy your obligation as set forth in Paragraph 13 below. You hereby irrevocably appoint us as your attorney-in-fact to make a claim for, receive payment of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy.

13. RISK OF LOSS. You shall bear all risks of loss of and damage to the Property from any cause and the occurrence of such loss or damage shall not relieve you of any obligation hereunder.

14. INSURANCE NON-COMPLIANCE. In the event you fail to comply with your obligations under Paragraph 12 of this agreement to deliver to us evidence of insurance naming us as Loss Payee, or upon the cancellation or non-renewal of the required insurance, then you shall be subject to an Insurance Non-Compliance Charge in the amount of $2.50 per month, per item of Equipment, said amount to be paid with the next monthly rental payment and all subsequent payments due during the remaining term of the Lease, or until such time as satisfactory evidence of insurance coverage has been provided. The imposition of the Insurance Non-Compliance Charge shall not relieve you of any obligation under Paragraph 13 of this agreement.

15. EVENT OF DEFAULT. If any one of the following events (each a "Default") shall occur, then to the extent permitted by applicable law, we shall have the right to exercise any one or more remedies set forth in Paragraph 16 below. (a) you fail to pay any rental or any other payment hereunder when due; or (b) you fail to perform any of the terms, covenants, or conditions of this Lease other than as provided above after ten (10) days written notice.

16. REMEDIES. If a Default occurs, we may do any or all of the following: (a) terminate this Lease; (b) declare all unpaid Lease payments until the end of the term of this Lease and other amounts under this Lease immediately due and payable; (c) repossess or render unusable, any Property wherever located, without demand or notice, without any court order or other process of law and without liability to you for any damages occasioned by such action; (d) require you to deliver the Property to a location designated by us; (e) proceed by court action to enforce performance by you of the Lease and/or recover all damages and expenses incurred by us by reason of any Default; or (f) exercise any other right or remedy available at law or in equity, including those of a secured creditor. You shall pay us all costs and expenses (including attorney's fees and costs) incurred by us in enforcing any of the terms of this Lease or any of our rights against you. Upon repossession or surrender of any Property, we may lease, sell or otherwise dispose of the Property, and apply the net proceeds thereof to the amounts owed to us hereunder, provided, that you shall remain liable to us for any deficiency. You agree that it is commercially reasonable for repossessed Property to be sold at public or private sales (in any state or county selected by us) to dealers or others in lots or pieces (with or without the Property being physically present) at used Property prices. Notwithstanding the foregoing, to the extent the Software is nontransferable or its transfer restricted, Lessee agrees that the Lessor and/or Licensor of the Software shall have no duty to remarket such Software or otherwise mitigate any damages relating to such Software. All rights and remedies are cumulative and may be enforced concurrently. Any delay or failure to enforce our rights hereunder does not prevent us from enforcing any rights at a later time. Notwithstanding the foregoing, any attorneys' fees, costs, or expenses, or costs or expenses of repossession and storage, shall be limited to the highest amount chargeable under applicable law.

17. CHANGE OF NAME, BILLING ADDRESS, BANK ACCOUNT. You will inform us, within ten (10) days, of any change in your name, address, billing address, telephone numbers, location of Property, or the bank checking account used by ACH debit. We are authorized to correct any typographic or spelling errors made on the front of this Lease Agreement regarding your address, telephone numbers or the Property leased.

18. END OF LEASE TERM. At the expiration or earlier termination of this Lease Term, you have the following options: (1.) You shall disconnect and return the Equipment and/or Software, freight prepaid, to us in good repair, condition and working order, in a manner and to a location we designate and all Lessee's right to use the Software shall terminate. (2.) Lessor extends an option to purchase the equipment at the end of the term for fair market value, which is estimated to be 10% of the Lease term times monthly Lease payment (excluding taxes) and return the Software in accordance with option 1. (3.) You can extend upon all the terms and conditions as stated herein for a period of one month from its expiration date without the necessity of the execution of any further instrument or document. At the end of this additional month, options 1, 2, and 3 are again available to you. Unless you notify us in writing 30 days prior to the expiration of the Lease Term, or monthly renewal period, you shall have been deemed to have chosen option 3 (Automatic Renewal for one month).

19. LATE PAYMENTS AND COLLECTION COSTS. If you do not make a payment within 10 days of its due date, you must pay, in addition to the payment, a late charge of $10.00 for each late payment. Each month the past due payment remains unpaid, an additional late fee of $10.00 will be assessed. You will pay our collection costs, and reasonable Attorney's fees. Such collection costs include, but are not limited to charges for collection letters and collection calls and to charges of collection agencies, courts sheriffs, etc. There will be a processing charge of $10.00 for any returned check or for any rejected credit card charge or for any rejected automatic bank account debit. Payments are applied to late fees and to processing charges first and then to Lease obligations.

20. MISCELLANEOUS. In the event you fail to comply with any provision of this Lease, we shall have the right, but not be obligated, to effect such compliance on your behalf. In such event, all monies expended by, and all expenses of ours in effecting such compliance, shall be deemed to be additional rental, and shall be paid by you to us at the time of the next monthly payment of rent. All notices under this Lease shall be sufficient if given personally or mailed to the party intended at the respective address set forth herein, or at such other address as said party may provide in writing from time to time. We intend and you intend this Lease to be a valid and subsisting legal instrument, and agree that any provision of this Lease which may be deemed unenforceable shall be modified to the extent necessary to render it enforceable and shall in no way invalidate any other provision or provisions of this Lease, all of which shall remain in full force and effect. This Lease shall be binding when accepted in writing by us and shall be governed by the laws of the State of Illinois, without regard to the conflict of law rules or principles thereof. Unless otherwise prohibited by law you agree and consent that the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in Cook County shall have the jurisdiction and shall be the proper venue for the determination of all controversies and disputes arising hereunder. You agree and consent that service of process by registered or certified mail will be sufficient to obtain jurisdiction. Nothing contained herein is intended to preclude us from commencing any action hereunder in any court having jurisdiction thereof. You waive, insofar as permitted by law, trial by jury in any action between the parties.

21. CHOICE OF LAW; ARBITRATION. Any claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, shall be determined by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association. All statutes otherwise applicable shall apply. Judgment upon the arbitration award may be entered in any court having jurisdiction. In event you or Guarantor Defaults, these provisions regarding arbitration shall not apply to our right to repossess the Equipment. This Lease is made in interstate commerce. Any arbitration shall take place in Chicago, Illinois.

22. LIMITATION ON ACTION. You shall commence any action based in contract, tort or otherwise arising from, or related to, this Lease, or the subject matter thereof, within one year of the accrual of that cause of action and no such action may be maintained which is not commenced within that period.

23. ENTIRE AGREEMENT; CHANGES. This Lease contains the entire agreement between the parties and may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by one of our executive officers.

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This assignment agreement, dated March1, 2010 (this "Agreement") is made and entered into pursuant to the Receivables Purchase Agreement (the "Purchase Agreement") by and among GCN HOLDING LLC, a Delaware liability limited company, and GCN HOLDING (CANADA) ULC, a Canadian unlimited liability company (together referred to as the "Seller"), and PUSHPIN HOLDINGS LLC, A Delaware limited liability company (the "Buyer"). Capitalized terms used herein without definition shall have the meaning specified in the Purchase Agreement.

Seller, for the consideration described in the Purchase Agreement, the receipt of which is hereby acknowledged, and subject to all of the terms and conditions of the Purchase Agreement, does hereby transfer and assign to Buyer, its successor and assignees, all of the Receivables as of the Closing Date.

Terms of the Purchase Agreement, including but not limited to, the representations, warranties, covenants, agreements and indemnities relating to the Receivables are incorporated herein by this reference. The partied hereto acknowledge and agree that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.

This Agreement shall inure to the benefit of, and be binding upon, the respective successor and permitted assignees of Seller and Buyer and shall be governed by and construed and interpreted in accordance with the Purchase Agreement and the laws of the State of New York, without regard to such state's conflicts of law rules which will require the application of the laws of a different jurisdiction.

This agreement may be executed by facsimile transmissions in multiple counterparts, each of which shall be an original, but together shall constitute one and the same instrument

[Signature page follows.]

[New York #2177584 v1]

Assignment Ex.

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be executed by their duly authorized representatives the day and year first above written.

GCN HOLDING LLC

By:_____
    Name:
    Title:

GCN HOLDING (CANADA) ULC

By:_____
    Name:
    Title:

PUSHPIN HOLDINGS LLC

By:_____
    Name: Jo___ ____en
    Title: ____


IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be executed by their duly authorized representatives the day and year first above written.

GCN HOLDING LLC

By:_____
    Name:
    Title:

GCN HOLDING (CANADA) ULC

By:_____
    Name:
    Title:

PUSHPIN HOLDINGS LLC

By:_____
    Name:
    Title:

Assignment Ex.

## INSTRUMENT OF ASSIGNMENT

Instrument of Assignment dated November 30, 2005 ("Instrument") by CIT Financial USA, Inc.. a Delaware corporation ("Seller"). in favor of GCN Holding LLC, a Delaware limited liability company ("Buyer").

Pursuant ot the Asset Purchase Agreement dated as of November 9, 2005, as amended as of November 30, 2005 (the "Agreement"). among CIT Group Inc.. CIT Financial Ltd.. Seller. Buyer. GCN Holding (Canada) ULC and Lease Finance Group LLC. for good and valuable consideration. The receipt and sufficiency of which are hereby acknowledged. Seller does hereby sell, assign, transfer, convey and deliver unto Buyer, its successors and assigns. each and all of the US Purchased Assets (as such term is defined in the Agreement) (other than legal title to the US Purchased Assets identified in Schedule 8.7 of the Agreement). intending hereby to convey all of the right, title and interest of Seller therein (other than such legal title).

Seller hereby covenants and agrees to and with Buyer, its successors and assigns, to do. Execute. acknowledge and deliver to, or to cause to be done. executed. acknowledge and delivered to, Buyer. its successors assigns, all such further acts. deeds, assignments, transfers, conveyances. powers of attorney and assurances that may be reasonably requested by Buyer for the better selling, assigning, transferring, conveying, delivering. assuring and confirming to Buyer. its successors or assigns, any or all of the right. title and interest in the US Purchased Assets being transferred hereby.

This Instrument shall be binding upon the successors and assigns of Seller and shall inure to the benefit of the successors and assigns of Buyer.

**IN WITNESS WHEREOF,** Seller has caused this instrument to be duly executed and delivered as of the date first set forth above.

CIT FINANCIAL USA, INC.

By:

Assignment Ex.

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST MUNICIPAL DISTRICT

PUSHPIN HOLDINGS, LLC )

    Plaintiff, )

    )

MICHAEL B. JOHNSON a/k/a )
MICHAEL BLAINE JOHNSON )

    )

    Defendant. )

Case No. 13M1 137047

Amount Claimed:  $3,310.29
Plus costs and fees

Before the Honorable Joseph D.
Panarese, Circuit Judge,
Courtroom 1101

## LIMITED AND SPECIAL ENTRY OF APPEARANCE

COMES NOW David M. Duree and David M. Duree & Associates, P.C.

and enter their appearance specially for the limited purpose of filing a Motion

on behalf of the Defendant to Vacate the Default Judgment.

Dated this 27th day of August 2013.

_____
David M. Duree
ARDC 0697087/Cook County Bar No. 13846
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
P.O. Box 1416
O'Fallon, IL 62269
Tel:   618-628-0186
Fax:  68-628-0259
Email:  law@dmduree.net

*Attorney for Defendant, Michael B. Johnson*

FILED
13 AUG 29 PM 1:35
CLERK OF THE CIRCUIT COURT
CIVIL DIVISION

**EXHIBIT E, Page 1 of 2**

Case No. 13M1 137047

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on Plaintiff's attorney by email and by first class mail, postage prepaid, this 27th day of August 2013, addressed as follows:

amadoff@madofflaw.com
Mr. Ari R. Madoff
Law Offices of Ari R. Madoff, P.C.
P.O. Box 64777
Chicago, IL 60664-0777

Mr. Ari R. Madoff
201 West Lake Street, Suite 227
Chicago, IL 60606

*Attorney for Pushpin Holdings, LLC*

PUSHPIN HOLDINGS, LLC )
          )    Case No. 13M1 137047
     Plaintiff, )
          )    Amount Claimed: $3,310.29
MICHAEL B. JOHNSON a/k/a )    Plus costs and fees
MICHAEL BLAINE JOHNSON )
          )    Before the Honorable Joseph D.
     Defendant. )    Panarese, Circuit Judge,
          )    Courtroom 1101

## SPECIAL ENTRY OF APPEARANCE AND
## VERIFIED MOTION TO VACATE THE DEFAULT JUDGMENT

COMES NOW Defendant, Michael B. Johnson a/k/a Michael Blaine

Johnson, and enters his appearance specially, by and through his attorney,

David M. Duree, and moves the Court to vacate the Default Judgment entered

in this case on August 21, 2013, in the amount of $3,660.29, for the following

reasons:

1.      Defendant, Michael B. Johnson a/k/a Michael Blaine Johnson,

enters his appearance specially for the limited purpose of moving to vacate the

Default Judgment, and does not enter his appearance generally.

2.      The Defendant was not served with the Summons or the

Complaint. See the Affidavits of Defendant Michael B. Johnson and his wife,

Martha C. Johnson, attached hereto and incorporated herein by reference.

3.      Pushpin Holdings, LLC is a Delaware limited liability company

which transacts a debt collecting business within the State of Illinois. It has

filed approximately 1,100 debt collection lawsuits in Cook County, Illinois, of

the type filed against Michael B. Johnson, the Defendant in this case.  See the Affidavit of Michael B. Johnson attached.

4.     The Judgment was entered in violation of 805 ILCS 5/13.70, which provides that "No civil action may be maintained in any Court of this state***arising out of the transaction of business by the corporation in this state until authority to transact business in the state is obtained by the corporation***".  Pushpin Holdings, LLC has not registered as a foreign corporation in the State of Illinois.

5.     The Default Judgment entered on about August 21, 2013 is void.  Pushpin Holdings, LLC is engaged in the debt collection business within the State of Illinois for the purpose of collecting debts it allegedly obtained by assignment.  It has filed about 1,100 lawsuits similar to the current lawsuit in Cook County, Illinois since January 1, 2011.

6.     Pushpin Holdings, LLC is not licensed as an Illinois debt collection agency under the Illinois Collection Agency Act.  See the Affidavit of Michael B. Johnson attached.

7.     The Judgment is void because it was obtained by an unlicensed debt collection agency attempting to collect an allegedly assigned debt in its own name.

8.     The practice of debt collection in Illinois by unregistered collection agencies is essentially the same as the practice of law by unlicensed attorneys. The Collection Agency Act prohibits unlicensed collection agencies from operating in Illinois either directly or indirectly for the purpose of collecting

**EXHIBIT F, Page 2 of 13**

debt in Illinois.  <u>LVNV Funding, LLC vs. Trice</u>, 2011 IL App (1st) 092773, 952 N.E.2d 1232, 1236, 352 Ill.Dec.6, 10 (1st Dist. 2011), PLA denied on November 30, 2011, 962N.E.2d 483 (Table No. 112834).

9.    A violation of the Collection Agency Act renders a Judgment void. <u>LVNV Funding, LLC vs. Trice</u>, 2011 IL App (1st) 092773, 952 N.E.2d 1232, 1235, 1236, 352 Ill.Dec.6, 9, 10 (1st Dist. 2011), PLA denied on November 30, 2011, 962N.E.2d 483 (Table No. 112834).

10.    <u>LVNV Funding, LLC vs. Trice</u> distinguished violations of the Collection Agency Act from those of a law firm which failed to registered with the Supreme Court under Supreme Court Rule 721(c) (but where all the individual attorneys working on the case were licensed and registered) and <u>Ford Motor Credit Co. vs. Sperry</u>, 214 Ill.2d 371 (2005) because the Collection Agency Act contains civil and criminal penalties for noncompliance whereas Supreme Court Rule 721(c) does not.  <u>LVNV Funding, LLC vs. Trice</u>, 952 N.E.2d 1232, 1235 (1st Dist. 2011).  The Supreme Court denied the Petition for Leave to Appeal in <u>LVNV Funding, LLC vs. Trice</u>.

11.    Motions to vacate a Judgment as void may be filed at any time.  It is not necessary to meet the conditions of 735 ILCS 5/1401.  <u>Sarkissian vs. Chicago Board of Education</u>, 201 Ill.2d 95, 104, 776 N.E.2d 195, 201-202 (2002).

12.    Any effort Pushpin Holdings, LLC to register under the Collection Agency Act after the fact, would not "save" the void Judgment entered before any attempted subsequent registration.  <u>LVNV Funding, LLC vs. Trice</u>, 2011 IL

**EXHIBIT F, Page 3 of 13**

Case No. 13M1 137047

App (1st) 092773, 952 N.E.2d 1232, 1235, 1236, 352 Ill.Dec.6, 9, 10 (1st Dist. 2011).

13. Defendant has additional viable defenses to the Complaint.

14. The alleged assignments attached to the Complaint, allegedly from CIT Financial USA, Inc. to GNC Holding, LLC on November 30, 2005 and the alleged assignment from GNC Holding, LLC and GNC Holding (Canada), ULC to, allegedly, Pushpin Holdings, LLC are invalid assignments because they do not comply with the Illinois Collection Agency Act, 225 ILCS 425/8(b) in that they do not contain, in a separate document, the consideration for the alleged assignments and they are not acknowledged by the corporate authority allegedly executing the alleged assignments, also in violation of 225 ILCS 425/8(b).

15. The alleged Affidavit and Verification of Alisha Rios, supposedly notarized by Louisa Tatbak, attached to the Complaint, could not possibly be based upon personal knowledge of Alisha Rios or business records of Pushpin Holdings, LLC and could not possibly establish verification for the alleged verified Complaint.

16. GCN Holding, LLC and GCN Holding (Canada), ULC are also not registered or licensed in Illinois under the Collection Agency Act, although GCN Holding, LLC is registered as a foreign corporation in Illinois, and is engaged in the business of collecting debts within the State of Illinois.

WHEREFORE, pursuant to this limited appearance, Defendant, Michael
B. Johnson, moves the Court to vacate the Default Judgment entered on about
August 21, 2013.

David M. Duree
ARDC 0697087/Cook County Bar No. 13846
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
P.O. Box 1416
O'Fallon, IL 62269
Tel:   618-628-0186
Fax:  68-628-0259
Email:  law@dmduree.net

*Attorney for Defendant, Michael B. Johnson*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served
on Plaintiff's attorney by email and by first class mail, postage prepaid, this
27th day of August 2013, addressed as follows:

amadoff@madofflaw.com
Mr. Ari R. Madoff
Law Offices of Ari R. Madoff, P.C.
P.O. Box 64777
Chicago, IL 60664-0777

Mr. Ari R. Madoff
201 West Lake Street, Suite 227
Chicago, IL 60606

*Attorney for Pushpin Holdings, LLC*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST MUNICIPAL DISTRICT

PUSHPIN HOLDINGS, LLC )
         )    Case No. 13M1 137047
     Plaintiff, )
         )    Amount Claimed: $3,310.29
MICHAEL B. JOHNSON a/k/a )    Plus costs and fees
MICHAEL BLAINE JOHNSON )
         )
     Defendant. )

## AFFIDAVIT OF MICHAEL B. JOHNSON

I, Michael B. Johnson a/k/a Michael Blaine Johnson, pursuant to 735
ILCS 5/1-109 declare, under penalties as provided by law pursuant to Section
1-109 of the Illinois Code of Civil Procedure declare and state the following:

1.     I was not served with Summons or the Complaint in this case.

2.     Near the end of July 2013 I found a copy of the Summons and
Complaint in a cardboard box, used for trash, on my front porch at 4029
Mountainview Street, Gastonia, North Carolina.

3.     I was never personally served with the Summons and the
Complaint.

4.     My wife, Martha C. Johnson, was not served with the Summons
and the Complaint personally or on my behalf.

5.     My wife, Martha C. Johnson, and I are the only two people living at
4029 Mountainview Street, Gastonia, NC 28056. Neither of us were home
when the Summons and Complaint were left in the cardboard box (used for
trash) on my front porch.

**EXHIBIT F, Page 6 of 13**

6. The Summons and Complaint were left in a cardboard box used for trash on my front porch and I discovered them later, during about the last week of July 2013.

7. The Complaint is based on an alleged lease, which allegedly bears my signature on behalf of the Lessee, S.E. Underground Utilities Contract, Inc. and allegedly bears my signature as a guarantor. See ¶ 4 of the Complaint and the copy of the alleged non-cancelable lease attached to the Complaint, in two pages. I did not sign the non-cancelable lease either on behalf of S.E. Underground Utilities Contract, Inc. or as guarantor. I did not authorize anyone to sign my name to the non-cancelable lease on my behalf, either on behalf as an alleged guarantor or on my behalf for S.E. Underground Utilities Contract, Inc.

8. I am not aware that a corporation with the name S.E. Underground Utilities Contract, Inc. ever existed. My father previously owned and operated a corporation with the name S.E. Underground Utilities Contractors, Inc. I did not sign the alleged non-cancelable lease attached to the Complaint in any capacity, either as a guarantor, or on behalf of S.E. Underground Utilities Contract, Inc., or on behalf of S.E. Underground Utilities Contractors, Inc.

9. Someone signed both of my alleged signatures on the non-cancelable lease. I did not sign the document in any capacity.

10. I have been advised that the equipment described on the alleged lease, a Hypercorn Ice 5700, is a machine for processing credit cards.

Case No. 13M1 137047

11.    S.E. Underground Utilities Contractors, Inc. was a corporation operated by my father. It is no longer in business. At one point in time I was employed by S.E. Underground Utilities Contractors, Inc.

12.    S.E. Underground Utilities Contractors, Inc. did not accept credit card payments and never had a machine for processing credit cards.

13.    Since approximately January 1, 2011, Pushpin Holdings, LLC has filed about 1,100 debt collection lawsuits, in Cook County, Illinois, claiming breaches of leases and guaranty agreements included in leases similar to the claims that are asserted against me in the above captioned case. As a result, Pushpin Holdings, LLC is engaging in business in the State of Illinois as a debt collector, collecting debts allegedly assigned to it from other parties.

14.    According to reports from the Illinois Secretary of State, Pushpin Holdings, LLC has not registered with the State of Illinois as a foreign corporation. See Exhibit A, a report from the Illinois Secretary of State dated August 26, 2013, attached hereto and incorporated herein by reference.

15.    According to the Illinois Department of Financial and Professional Regulation, in a report dated August 26, 2013, Pushpin Holdings, LLC is not licensed as a debt collecting agency in the State of Illinois. See Exhibit B, a report from the Illinois Department of Financial and Professional Regulation, attached hereto and incorporated herein by reference.

Further Affiant Sayeth Not.

Case No. 13M1 137047

I declare under penalties as provided by law pursuant to 735 ILCS 5/1-109 that the facts and matters set forth above are true and correct to my best knowledge, information and belief.

*Michael B Johnson*
MICHAEL JOHNSON

Page 4 of 4

**EXHIBIT F, Page 9 of 13**



JESSE WHITE
SECRETARY OF STATE

## CORP/LLC - CERTIFICATE OF GOOD STANDING

Your search for Pushpin Holdings, LLC, did not match any records in the Corporation/LLC-GS Search database.

Please try again.

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

EXHIBIT A
**EXHIBIT F, Page 10 of 13**

 

 **Illinois Department of Financial & Professional Regulation**

Manuel Flores, Acting Secretary

Pat Quinn, Governor

Start a New Search

Printer Friendly View

**SEARCH FOR LICENSEE BY PROFESSION:**

**THERE ARE 0 RECORDS WHOSE NAME CONTAINS: Pushpin Holdings, LLC**

The name, Pushpin Holdings, LLC, was not found

*HINT: You might try searching on part of the name;*
*e.g. "tyre" instead of "McIntyre"*

**Agency Quick Links**
IDFPR Home Page
Información Disponible En Español
License Look Up
Physician Profile
License Renewals
Latest News
Discipline Information
Consumers
Professionals
Information About
IDFPR
Banking
Non-banking Financial Institutions
Professional Regulation
About IDFPR
Contact Information
General FAQs
Boards & Committees
Search IDFPR.com

**Express Access License Look-Up has been approved for use as a primary source for verification by The Joint Commission and the National Committee for Quality Assurance.**

NEW FEATURE: If the licensee has multiple licenses with the agency, "Multiple Licenses" will appear below the license number and information about their other licenses is available by clicking on the words "Multiple Licenses".

PLEASE NOTE: If the phrase "Chaperone Required" appears below the license status, the licensee can only practice with a chaperone present. You can click on the words "Chaperone Required" for more information.

If the "Ever Disciplined" column contains a "Y," there has been disciplinary action taken against this license. Click on the "Y" to view details of the disciplinary action. The Department regulates various professions and issues many licenses and registrations. As such it is possible that an individual could have a license in more than one profession. License Look-Up is limited to the specific profession you have inquired about. If you wish to view comprehensive reports in Adobe Acrobat format for disciplines that occurred after September 1996, click HERE. The Illinois Department of Professional Regulation publishes a monthly report detailing disciplinary action taken by the Department. Each Disciplinary Report is a listing of all licenses disciplined by the Department within a given month. The information includes the licensee's name, the discipline imposed and a brief description of the reason for the discipline. All Monthly Disciplinary Reports are accurate on the date of issuance or initial date of publication. However, disciplinary actions may be subject to further court orders that may stay, affirm, reverse, remand or otherwise alter Department disciplinary orders. Please note that discipline which has been reversed by court order will not appear in this summary of discipline.

Click here for definitions of the different types of disciplinary actions the Department may impose.

Click here for license status definitions.

NOTE: This license look-up is accurate for the current license status, but due to computer conversions, the original issuance date may be in error. If the issuance date shown is 01/01/1997, this is a computer generated date, not the original issuance date. For original issuance dates, please contact the Department.

Financial & Professional Regulation

| State of Illinois | Illinois Privacy Information | Privacy Statement | Accessibility | Contact IDFPR

**EXHIBIT F, Page 11 of 13** EXHIBIT B

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST MUNICIPAL DISTRICT

PUSHPIN HOLDINGS, LLC )
)  Case No. 13M1 137047
    Plaintiff, )
)  Amount Claimed: $3,310.29
MICHAEL B. JOHNSON a/k/a )  Plus costs and fees
MICHAEL BLAINE JOHNSON )
)
    Defendant. )

## AFFIDAVIT OF MARTHA C. JOHNSON

Martha C. Johnson, pursuant to 735 ILCS 5/1-109 declare, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure declare and state the following:

1.    Michael B. Johnson, my husband, was not served with Summons or the Complaint in this case.

2.    I was not served with the Summons and Complaint on behalf of my husband, Michael B. Johnson.

3.    My husband, Michael B. Johnson a/k/a Michael Blaine Johnson, and I are the only two people living at 4029 Mountainview Street, Gastonia, NC 28056. Neither of us were home when the Summons and Complaint were left in the cardboard box (used for trash) on our front porch.

4.    The Summons and Complaint were left in a cardboard box used for trash on our front porch, and Michael Johnson discovered them later, during about the last week of July 2013.

Page 1 of 2

Case No. 13M1 137047.

5. The signatures on the alleged non-cancellable lease are not the signatures of my husband, Michael B. Johnson. I am familiar with his signature.

6. The two purported signatures on the non-cancelable lease attached to the Complaint are not the signatures of my husband, Michael B. Johnson.

Further Affiant Sayeth Not.

I declare under penalties as provided by law pursuant to 735 ILCS 5/1-109 that the facts and matters set forth above are true and correct to my best knowledge, information and belief.

*Martha Johnson*

MARTHA JOHNSON

Case No. 13M1 137047

**EXHIBIT F, Page 13 of 13**

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, 1ST MUNICIPAL DISTRICT

PUSHPIN HOLDINGS LLC

               Plaintiff

v.

MICHAEL B JOHNSON A/K/A MICHAEL
BLAINE JOHNSON

               Defendant

Case Number: 13 M1 137047

Courtroom: 1101

## NOTICE OF ENTRY OF *EX-PARTE* DEFAULT JUDGMENT

PLEASE TAKE NOTICE, that an *ex-parte* Judgment by default has been entered in the above captioned courtroom of the Circuit Court of Cook County, Illinois in favor of PUSHPIN HOLDINGS LLC and against you on the above captioned matter. A copy of the entered judgment order reflecting the judgment amount, judgment date and entering Judge is attached hereto. You are authorized to contact the Judgment Creditor, PUSHPIN HOLDINGS LLC's Legal Collections Department directly at 888-271-4490 , to discuss any payment arrangements towards satisfaction of judgment.

Law Offices of Ari R. Madoff, P.C.

LAW OFFICES OF ARI R. MADOFF, P.C. (Attorney ID 48654)
Attorneys for Plaintiff PUSHPIN HOLDINGS LLC
[address illegible]
[illegible] 60277

## Certificate of Service by Mail

The undersigned, an attorney certifies that he caused to be served a copy of the foregoing Notice of Entry, by placing a copy of the Notice with entered order attached, in an envelope with sufficient postage prepaid and affixed, and directed to Defendant at Defendant's last known address listed below, and caused or directed the envelope to be deposited in a United States Postal Service Mail Box located in Chicago, IL on the date of filing reflected on the court file stamp above.

BY USPS MAIL TO:
MICHAEL B JOHNSON
4029 MOUNTAINVIEW ST
GASTONIA, NC 28056

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ALL INFORMATION PROVIDED WILL BE USED FOR THAT PURPOSE.

LEASE NO. 1317198

**EXHIBIT G, Page 1 of 2**

Order/Trial Call  (This Form replaces CCM1-0643)          CCM N346-50M (            )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, 1ST MUNICIPAL DISTRICT

PUSHPIN HOLDINGS LLC                              LINE NO ____3____

v.

}                                                CASE NO.  13 M1 137047

                                                 COURT RM.  1161

MICHAEL B JOHNSON A/K/A MICHAEL BLAINE JOHNSON

TRIAL CALL ORDER

Present before the Court: ☐Plaintiff(s) ☐Defendant(s) ■Plaintiff(s)' Counsel ☐ Defendant(s)' Counsel

        THIS MATTER having come before the Court, the Court having Jurisdiction and being fully advised, IT IS HEREBY
ORDERED:

4213   ☐ Alias Summons to Issue for _____

4292   ☐ Amended Complaint or Petition- Allowed _____

4295   ☐ Close Discovery- Allowed _____

4235   ☐ File Counterclaim or Cross Complaint- Allowed _____

4234   ☐ File Appearance or Jury Demand Answer or Plea Allowed _____

4219   ☐ Defendant MICHAEL B JOHNSON A/K/A MICHAEL BLAINE JOHNSON is defaulted; cause set for;

4247   ☐ Prove Up on _____, _____ at .9:30 a.m. in Room 1161

4406   ☐ Set for Status. All parties must appear _____, _____ at _____ a.m./p.m in Room _____

4482   ☐ Set for Trial on _____, _____ at _____ a.m./p.m  in Room _____

8005   ☐ Case Dismissed for Want of Prosecution

8011   ☐ Case Dismissed by Agreement of Parties/No Cost ☐ With ☐ Without Prejudice

8031   ☐X-Parte Default Judgment for Plaintiff for $ __3660.29_____ v.  MICHAEL B JOHNSON (def.)

8001   ☐ Judgment for Plaintiff after trial for $_____ with costs assessed v. _____ (defendant)

4293   ☐ Assess Costs- Allowed

8002   ☐ Judgment for Defendant _____ after trial

9207   ☐ It being further agreed that Installment payments be made as follows:_____

( )    ☐ _____

9208   ☐ Order Final and Appealable

4304   ☐ The date of _____ is hereby stricken.

                                                 Associate Judge Joseph D. Panarese

                                  ENTERED:           AUG 2 1 2013

Law Offices of Ari R. Madoff, P.C.(# 48674)    Dated: _____
Attorney for Plaintiff                                 Circuit Court – 1923
POB 64777
CHICAGO, IL 60664-0777
312/379.9529(p)(f)312/980.6819          _____      _____
Ret. D. 08-07-2013                         Judge                Judge's No.
LSE NO. 1317198

_____ BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**EXHIBIT G, Page 2 of 2**