UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL B. JOHNSON, on behalf of himself and on behalf of those similarly situated plaintiffs, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 13 C 7468 |
| PUSHPIN HOLDINGS, LLC, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on Plaintiff Michael B. Johnson's ("Johnson") renewed motion to remand. For the reasons set forth below, Johnson's motion is denied.

## BACKGROUND

On September 11, 2013, Johnson, a North Carolina resident, filed this action, individually and on behalf of a putative class of similarly situated plaintiffs, in the Circuit Court of Cook County, Illinois ("Illinois State Court"), against Defendants Pushpin Holdings, LLC ("Pushpin"), Jay Cohen, Leonard Mezei, Ari Madoff, Alisha Ross, Louisa Tatbak, Shaun Redwood, GNC Holding, LLC ("GNC Holding"), and CIT Financial USA, Inc. ("CIT Financial") (collectively "Defendants").

Johnson alleges that on August 21, 2013, a default judgment was entered against him for $3,660.29, in favor of Pushpin, in Cook County, Illinois. According to the Cook County Small Claims Court complaint, Pushpin originally acquired the claims against Johnson based on a lease agreement between Johnson and CIT Financial. CIT Financial later assigned its rights to GCN Holding, which were subsequently re-assigned to Pushpin.

Johnson alleges in his six-count complaint that Defendants violated the Illinois Consumer Fraud and Deceptive Business Act ("ICFA"), 815 Ill. Comp. Stat. Ann. 505/2, by filing and threatening to file lawsuits against Johnson and other members of the putative class without being properly registered as a foreign company or debt collection agency, which itself is a violation of the Illinois Collection Agency Act ("ICEA"), 225 Ill. Comp. Stat. Ann. 425/1. Johnson also alleges malicious prosecution, abuse of process and fraud.

Defendants removed the case pursuant to 28 U.S.C. §§ 1446 and 1453, premising federal jurisdiction on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Johnson sought the remand of this case back to Illinois State Court arguing that the class claims were less that the requisite minimum $5 million threshold to maintain a CAFA suit in federal court. *See* 28 U.S.C. § 1332(d)(2). On February 21, 2014 this Court granted Johnson's motion for remand and subsequently Pushpin appealed. *See Johnson v. Pushpin Holdings, LLC*, 2014 WL 702316 (N.D. Ill. Feb. 21, 2104). On May 1, 2014, the Seventh Circuit reversed this Court's

determination that remand was appropriate, concluding that absent Johnson's irrevocable commitment to obtain less than $5 million for the class, Defendants' representations concerning the estimated damages recoverable by the class warrant further consideration. In its remand order, the Seventh Circuit stated, "[t]he judge will have to determine anew whether the amount in controversy reaches the statutory minimum, thus barring remand." *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014).

## LEGAL STANDARD

Under CAFA, a defendant may remove a class action to federal court as long as the case satisfies the statute's special diversity and procedural requirements. CAFA vested district courts with original jurisdiction over any class action where the amount in controversy exceeds the sum or value of $5,000,000 (exclusive of interest and costs) and where there is minimal or incomplete diversity of citizenship among the parties. 28 U.S.C. § 1332(d)(2). The proper protocol for assessing removal claims was laid out in *Brill v. Counrtywide Home Loan, Inc.*, 427 F.3d 446 (7th Cir. 2005). The removing party, as the proponent of federal jurisdiction, bears the burden of describing how the controversy exceeds $5 million. This is a pleading requirement, not a demand for proof. *See Id*. at 448. A removing defendant does not need to "confess liability in order to show that the controversy exceeds the threshold." *Id*. at 449. "[T]he removing party's burden is to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands . . . .

The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks." *Id.*

Once the proponent of federal jurisdiction has explained the plausibility of the defendants liability exceeding $5 million, cf. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much. *ABM Security Services, Inc. v. Davis*, 646 F.3d 475, 478 (7th Cir. 2011).

## DISCUSSION

Johnson renews his motion to remand by arguing that removal of this case to federal court was defective, due to the lack of subject matter jurisdiction under CAFA. Johnson's continued protestations are based on the Defendants' alleged failure to establish that Johnson's collective class claims could clear the $5 million threshold and meet CAFA's federal jurisdictional requirements. At the outset it is important to note that Johnson's complaint does not set a cap on recovery of under $5 million, nor does the complaint include a stipulation or affidavit limiting recovery to under $5 million. Absent an "irrevocable commitment to obtain less than $5 million dollars for the class" the Court must determine the validity of Defendants' arguments concerning the plausibility of Johnson's potential recovery. *Johnson*, 748 F.3d at 773.

Johnson is adamant that his calculations of fees are correct, including: (1) compensatory damages, $355,407.62; (2) recoverable attorney's fees and litigation

expenses, $33,311.66; and (3) the maximum permissible punitive damages, using 9:1 multiplier, (9 x $355,407.62) $3,198,668.58; totals $3,587,387.86, which represents the maximum amount that the class could recover and supports remand back to Illinois State Court. However Johnson's calculations are unrepresentative of the total "potential damages that the class would be able to recover." *Id*. at 772.

In determining Johnson's potential recovery the Court focuses its attention on the scope of Johnson's complaint at the time of removal. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 n.2 (7th Cir. 2012); *see also In re Burlington Northern Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010). Johnson's complaint seeks recovery for violations of state consumer protection statutes, malicious prosecution, abuse of process, time lost, and punitive damages. Johnson's expansive complaint is greatly contrasted by his present posture, which asserts that the putative class's recovery is limited. Johnson seeks compensatory damages to re-recover all funds Pushpin received impermissibly from Lease Guarantors in the amount of $355,407.62. However, the amount actually recovered by Pushpin represents only a portion of Defendants' potential liability. Johnson's complaint also may allow for the recovery of judgments that were improperly entered against himself and the putative class. Defendants have supplied the affidavit of Joseph Sussman ("Sussman"), an attorney for Pushpin, who attests that on August 21, 2013, Pushpin entered a judgment against Johnson for $3,660.29. Even though a judgment had been entered, Sussman states that Pushpin has not collected any money from Johnson.

Johnson, as the class representative, appears to have suffered the impermissible entry of a judgment against him, without any money being collected. Sussman continues that from March 2010 until October 2013, Pushpin entered judgments against Lease Guarantors totaling $1,284,717.38. Factoring the potential recovery for all judgments entered against Lease Guarantors, Pushpin's total exposure to liability greatly eclipses the $355,407.62 figure Johnson asserts. The Court is left with drastically changed potential liability. The Court calculates the new potential liability as follows: (1) compensatory damages for judgments entered and re-recovered, ($1,284,717.38 entered + $355,407.62 re-recovered) $1,640,125; (2) recoverable attorney's fees and litigation expenses, $33,311.66; and (3) the maximum permissible punitive damages using 9:1 multiplier (9 x $1,640,125) $14,761,125; which totals $16,434,561.66. Clearly, it is plausible that the amount in controversy exceeds $ 5 million.

Even assuming that Johnson's submitted determination of compensatory damages is accurate at $355,407.62, Defendants argue that Johnson's submitted cap on punitive damages is incorrect. Johnson asserts that the 9:1 ratio on punitive damages limits recovery. Johnson cites two cases to support his assertion that "[t]he due process clause of the Constitution of the United States limits punitive damage. . ." Johnson's reliance on the strict adherence to a 9:1 ratio as allegedly determined in the supplied cases is misplaced. Initially in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), the Supreme Court limited punitive damages to a 1:1 ratio for oil spilt in Prince William Sound, Alaska, following the Exxon Valdez oil spill. The Court

specifically determined, ". . . that a 1:1 ration, which is above the medium award, is a fair upper limit in such maritime cases." *Id*. at 512. Johnson's inclusion of a maritime case, where the relevant compensatory damages where levied at $507.5 million does not stand for an established cap on punitive damages. Additionally, Johnson posits that *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), stands for the overarching bar on punitive damages over a 9:1 ratio. This is not the case. In *State Farm,* the Court determined that based on the plaintiff's claim for emotional distress an award of $145 million in punitive damages on a $1 million compensatory judgment violated due process. The *State Farm* Court went on to specifically decline to "impose a bright-line ratio which punitive damage[] award[s] cannot exceed." *Id.* at 1516.

Defendants argue that the potential punitive award can greatly exceed the 9:1 ratio which can be assessed against them. *See Phillip Morris v. Williams*, 549 U.S. 346 (2007) (upholding a nearly 100:1 punitive damages multiplier); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 676 (7th Cir. 2003) (affirming a 37.2:1 punitive damages multiplier). It is clear that to comport with the Constitutionality of punitive damages multipliers a court must weigh a variety of facets concerning the conduct seeking to be punished against the award being sought. *See State Farm*, 538 U.S. at 426. However at this junction in the case at bar we do not need to weigh such issues. The Defendants have established the plausibility of being liable for a higher multiplier in determining punitive damages.

The Court does not address Johnson's arguments originally included in his November 31, 2013, Memorandum of Law in Support of Its Motion to Remand and not included in his Supplemental Memorandum. Looking to Johnson's complaint, it is impossible to determine the validity of Johnson's arguments seeking the exclusions of equipment lease guarantees from the amount in controversy figures without further information.

Johnson has not demonstrated that it is legally impossible for him to recover an amount over the $ 5 million threshold for CAFA jurisdiction. Defendants have sufficiently provided reliable information to establish the propriety of this Court's subject matter jurisdiction under CAFA. Johnson's motion to file a Reply in Support of its Supplemental Memorandum in Support of its Motion to Remand is denied as moot. Defendants' motion to strike Johnson's Reply is also denied as moot.

## CONCLUSION

For the aforementioned reasons, the Court denies Johnson's motion to remand.

*Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

August 13, 2014
Dated: _____