UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL B. JOHNSON, | ) | |
| on behalf of himself and on behalf of | ) | |
| those similarly situated plaintiffs , | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | 2013-CV-7468 |
| | ) | |
| PUSHPIN HOLDINGS, LLC, JAY | ) | |
| COHEN, LEONARD MEZEI, ARI | ) | |
| MADOFF, ALISHA ROSS, LOUISA | ) | |
| TATBAK, SHAUN REDWOOD, GCN | ) | |
| HOLDINGS, LLC, and CIT FINANCIAL | ) | |
| USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant Pushpin Holdings, LLC ("Pushpin"), Jay Cohen ("Cohen"), Leonard Mezei ("Mezei"), Ari Madoff, Alisha Ross, Louisa Tatbak, Shaun Redwood, GCN Holdings, LLC ("GCN Holdings"), and CIT Financial USA, Inc.'s ("CIT Financial") (collectively the "Defendants") motion to dismiss brought pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the following reasons, the Defendants' motion to dismiss is granted in its entirety.

**BACKGROUND**

For the purposes of the instant motion, the following well-pleaded allegations

derived from Plaintiff Michael Johnson ("Johnson"), Colleen Kitchens, Alicia Holton

("Holton"), Stephen Garcia –Agosto, Robert Rotella, Sr., Robert Marsh, Krystyn

Wein ("Wein"), Robin Krier, Steven McAnally ("McAnally"), Eric Rinkoff, and

Joseph Garcia's (collectively the "Plaintiffs")  second amended complaint ("SAC")

are accepted as true for the purposes of this motion.  The Court draws all reasonable

inferences in favor of the Plaintiffs. *Purdue Research Found v. Sanofi-Synthelabo,*

*S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

Pushpin is a Delaware limited liability company which engages in debt

collection activity.  Although not registered in the State of Illinois as a foreign

company doing business in Illinois, Pushpin was responsible for filing over 3,000

small claims collection cases in small claims court in Illinois.  Pushpin is owned and

controlled by Cohen and Mezei.  GCN Holdings is a limited liability company

registered to conduct business in Illinois, and is also owned and controlled by Cohen

and Mezei.  GCN Holdings acquired outstanding debt from financial institutions and

would transfer the collections responsibilities to Pushpin or some other entity owned

by Cohen and Mezei.

In approximately 2003, CIT Financial worked in conjunction with another

financial institution to market and sell credit card processing machines to consumers

and businesses.  The credit card processing machines were leased to individuals and

2

the contracts were memorialized in equipment finance lease agreements ("Lease Agreements"). CIT Financial was listed as the lessor and the customers were identified as the lessees. These Lease Agreements permitted the customers to purchase the credit card processing machines at the end of the lease period, which typically lasted forty-five months. In conjunction with the Leases for the equipment, the lessees were required to sign personal guarantees ("Guaranty Agreements").

It is alleged that the credit card processing machines had a fair market value of $250. However, the total amount of the lease payments was over $3,000 per machine. The machines were defective and frequently failed to work satisfactorily. The sales representatives who engaged in selling the machines were agents of CIT Financial and marketed the credit card processing machines aggressively. When the sales representatives finalized the transaction, the Lease Agreements for Johnson, Wein and McAnally were forged and executed by unauthorized individuals.

The Lease/ Guaranty Agreements contained a venue and forum provision which required litigation to be conducted in Cook County, Illinois. Furthermore, the Lease/ Guaranty Agreements contained a choice of law provision which selected the application of Illinois law. When the Lease Agreements were made CIT Financial knew that it would assign its claims under the Lease Agreements to Cohen, Mezei, GCN Holdings and Pushpin acting as a collection agency.

Between March 2010 and November 2014, Pushpin filed more than 3,000 small claims lawsuits in Cook County, Illinois against the Guarantors of the Lease

Agreements for the credit card processing machines. The small claims lawsuits filed by Pushpin (with the exception of the small claims complaint filed against Garcia, in which the acquiring entity of the debt from CIT Financial was GlobalTech Leasing, Inc.) alleged that CIT Financial assigned the Lease/ Guaranty Agreements to GCN Holdings on November 30, 2005 under the terms of an Asset Purchase Agreement dated November 9, 2005.

Each of the small claims suits were for less than $5,000, therefore the cost incurred by the small claims court defendants in defending the cases were substantially greater than the amount sought in the suit. Prior to filing the small claims complaints, Pushpin sent demand letters to the small claims defendants threatening litigation if the outstanding balances were not satisfied.

On September 11, 2013, Johnson, a North Carolina resident, filed this action individually and on behalf of a putative class of similarly situated plaintiffs in the Circuit Court of Cook County, Illinois against the Defendants. Johnson alleges that on August 21, 2013, a default judgment was entered against him for $3,660.29 in favor of Pushpin in Cook County, Illinois. According to the Cook County Small Claims Court complaint, Pushpin originally acquired the claims against Johnson based on the Lease Agreement between Johnson and CIT Financial. CIT Financial later assigned its rights to GCN Holdings, which were subsequently re-assigned to Pushpin.

The Defendants removed the case pursuant to 28 U.S.C. §§ 1446 and 1453 to this Court, premising jurisdiction on the Class Action Fairness Act. On November 21,

2014 the Plaintiffs filed their Second Amended Complaint ("SAC") naming additional individual plaintiffs.  The Plaintiffs' allege: (1) a violation of the Illinois Consumer Fraud and Deceptive Business Act ("ICFA") for a "disguised unlawful penalty for breach of contract" in the Lease/ Guaranty Agreements; (2) violation of the ICFA because the lawsuits  were filed "almost ten years after the debts occurred;" (3) violation of the ICFA for Pushpin's failure to register as a debt collection agency under the ICAA; (4) a violation of the ICFA based on the expiration of the Lease/ Guaranty Agreements; (5) the Defendants abuse of process; (6) the Defendants unlawfully engaged in malicious prosecution of the Plaintiffs.  After a prolonged series of litigation concerning the propriety of the case before this Court, the Defendants filed the instant motion to dismiss on January 13, 2015.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Additionally, the allegations in the complaint must "actually suggest that the plaintiff has a right to relief, by

providing allegations that raise a right to relief above a speculative level." *Tamayo*, 526 F.3d at 1084 (emphasis in original).

## DISCUSSION

The Plaintiffs' SAC levies a variety of claims against the Defendants based on their efforts to collect money on the Lease/ Guaranty Agreements for the contracted credit card processing machines. The Defendants have moved to dismiss all counts of the Plaintiffs' SAC for various reasons.

### I. ICFA Claims (Counts I, II, III, and IV)

### A. Standing

The Defendants assert that the Plaintiffs lack standing under the ICFA. The Defendants contend that the lack of an active Illinois state court case deprives the Plaintiffs of their ability to proceed with the case at bar. The primary case cited by the Defendants stands for the proposition that the resolution of a claim brought by an individual plaintiff to remedy unlawful conduct extinguishes the right of a putative class to continue with their claims. *See Physicians Healthsource, Inc. v. Allscripts-Misy's Healthcare Solutions, Inc.*, 12 C 3233, 2012 WL 5989203, at *1 (N.D. Ill. Nov. 29, 2012) (individual plaintiffs' TCPA claim were settled which rendered their putative class claims moot). *Physicians Healthsource* involved the settlement of the named plaintiff's claims in a proposed class action lawsuit brought under the Telephone Consumer Protection Act. The court reasoned that the satisfaction of the named plaintiff's claims mooted the claims of any putative class members before a

motion for class certification was submitted. *Id*. at *1. The procedural posture of the case at bar is distinctly different from the cases the Defendants rely on. Here, the allegedly unfair nature of the debt collection claims brought by the Defendants in Illinois small claims court is the basis for the Plaintiffs' claims before the Court. The Plaintiffs' suit seeks redress from the unlawful conduct allegedly perpetrated by the Defendants in their previous state court action. In light of the fact that there were no active cases between Pushpin and the Guarantors in state court, the Plaintiffs' standing to sue is doubtful.

The Defendants also assert that the Plaintiffs have inadequately alleged that Pushpin's activities fall under the ICFA and that the ICFA applies to out of state Plaintiffs. Initially, the Defendants submit that the Plaintiffs have not alleged that the conduct Pushpin engaged in constitutes "trade" or "commerce" under the ICFA. Pushpin, allegedly acting as a debt collection agency, contends that its activities should not fall under the purview of the ICFA. Contrary to the Defendants' contention, the Illinois Supreme Court and many federal courts have found that debt collection practices are embraced by the ICFA. *People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 64 (Ill. 1991) ); *see also Bradley v. Fairbanks,* 02 C 7786, 2003 WL 21011801, at *4 (N.D. Ill. May 5, 2003); *Perperas v. United Recovery Sys., Inc.,* 96 C 7693, 1997 WL 136326, at *2-3 (N.D. Ill. Mar. 19, 1997). Given the multitude of Illinois state and federal courts which have allowed ICFA cases to proceed against debt collection agencies, this Court determines that the Plaintiffs' allegation of unfair

debt collection practices is sufficiently alleged to pursue an ICFA claim against Pushpin.

The Defendants focus on the Plaintiffs residence in submitting that the territorial limitations of the ICFA bar their claims. The Illinois Supreme Court in *Avery v. State Farm Mutual Automobile Insurance Co.,* 835 N.E.2d 801 (Ill. 2005), severely limited the extraterritorial reach of the ICFA. The *Avery* court held that nonresident plaintiffs may sue under the ICFA only if the circumstances relating to the alleged fraudulent transaction occurred primarily in Illinois. *Id.* at 852–53. More specifically, the Illinois Supreme Court held that the ICFA did not create a cause of action for fraudulent acts that had little or no connection to the state of Illinois. *Id.* Accordingly, for a nonresident plaintiff to have standing under the ICFA, it is required that "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 853–54.

Although none of the Plaintiffs reside in Illinois, the SAC alleges that Pushpin unlawfully filed over 3,000 small claims cases in Illinois small claims court, based on the venue and choice of law provisions in the Lease/ Guaranty Agreements. Therefore, according to the Plaintiffs, the situs of the Defendants unlawful conduct occurred primarily, and substantially, in Illinois. The Plaintiffs' allegations are sufficiently tied to Illinois to support the application of the ICFA.

### B. Unfair Practices

The Defendants argue that the Plaintiffs have not alleged a deceptive act under the ICFA. However, the Plaintiffs assert that the Defendants' conduct in filing more than 3,000 small claims cases was an unfair practice under the ICFA. The ICFA provides redress for deceptive business practices and also for business practices that, while not deceptive, are unfair. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574–75 (7th Cir. 2012). Complaints alleging deceptive practices in violation of the ICFA must be pled with sufficient particularity under Fed. R. Civ. P. 9(b), while those alleging unfair practices need only meet the notice pleading of Fed. R. Civ. P. 8(a). *Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Services. Inc.,* 536 F.3d 663, 670 (7th Cir. 2008).

The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). To state a claim under the ICFA, the Plaintiffs must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010), citing *Robinson*, 775 N.E.2d at 960. In addition, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." *Id.* at 935. "The [ICFA] is

'liberally construed to effectuate its purpose.' " *Id.* (quoting *Robinson,* 775 N.E.2d at 960). The Plaintiffs allege that the Defendants' conduct was unfair and oppressive, which warrants the application of the ICFA. The Defendants contend that the Plaintiffs have failed to sufficiently plead that an unfair practice occurred.

To determine whether a business practice is unfair, courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson,* 775 N.E.2d at 961 (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Windy City Metal Fabricators & Supply, Inc.*, 536 F.3d at 669. Unfairness under the ICFA "depends on a case-by-case analysis." *Siegel*, 612 F.3d at 935 . The Court will gauge the sufficiency of the Defendants' alleged unfair conduct within each ICFA claim.

### A. Count I-ICFA

The Plaintiffs assert that the Lease /Guaranty Agreements disguised an unlawful penalty for breach of contract due to the disparate pricing of the actual cost of the credit card processing machines compared to the required payment in violation of the ICFA. The Plaintiffs submit that the reasonable purchase price of the unit was $250.00, compared to the total of all lease payments equaling $3,000.00. The

Plaintiffs' fortify their position by also alleging that the venue provision of the Lease Agreements was an unlawful penalty due to the distant geographical distances the out of state signatories would have to travel to defend their case.

We turn our attention to the Plaintiffs' first contention that the Defendants' Lease/ Guaranty Agreements contained an unenforceable penalty for breach of contract. Under Illinois law, a contract contains an unenforceable penalty only when "[the] sole purpose of the [contractual] clause [or the penalty itself] is to secure performance of the contract." *Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 562 (7th Cir. 2001) (applying Illinois law the Seventh Circuit determined that a contract requiring their payment of $150,000 if the installment payments were not paid in a timely fashion constituted an unlawful penalty). Plaintiffs' SAC alleges that the discrepancy in price between the reasonable value of the machines and the total amount paid under the Lease Agreement was unfair. The Plaintiffs do not allege that the Lease/ Guaranty Agreements contained a provision which mandated a specific amount if the payments were not made. In fact, the Plaintiffs' SAC specifies that the purchase of the credit card processing machines was not mandatory and only an option that could be exercised at the conclusion of the lease. The lack of a "penalty" provision is determinative. The Supreme Court of Illinois has instructed that charging an unconscionably high price, generally, is insufficient to establish a claim of unfairness. *Robinson*, 775 N.E.2d at 951; *Batson v. Live Nation Entertainment, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014). Plaintiffs' SAC is devoid of any description

concerning why or how the claimed discrepancy in pricing is unfair. Plaintiffs' bare assertion of unfairness, without describing in what manner the price of the credit card machines either violate public policy or is oppressive, is insufficient to state a cause of action. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584 (Ill. 1996).

The Plaintiffs also allege that the venue provision of the Lease/ Guaranty Agreements contains an unlawful penalty clause because it requires the out-of-state signatories to travel to Chicago, Illinois to defend themselves in a small claims case. Despite Plaintiffs' allegations, a forum selection clause is enforceable to the same extent as any other contractual provision, which requires its enforcement barring some allegations of fraud or mistake. *IFC Credit Corp. v. Aliano Bros. Gen Contractors, Inc.*, 437 F.3d 606,610 (7th Cir. 2006). The Plaintiffs do not allege that the venue provision was imposed on them through fraudulent means. Nor is the venue provision alleged to be included as a penalty to ensure full performance of the contract. The mere inconvenience of the parties complying with the venue provision does not warrant labelling it unfair for the purposes of establishing an ICFA claim. Accordingly, the Defendants' motion to dismiss Count I of Plaintiffs' SAC is granted.

### B. Count II-ICFA

Broadly, the Plaintiffs allege that the Defendants unlawfully filed 3,000 small claims cases which they knew were lacking in merit. Count II of the Plaintiffs' SAC contains four sub-classes that allegedly bar the initiation of the small claims actions. The Plaintiffs allege that each sub-class is a violation of the ICFA. The Plaintiffs

contend that the initiation of the Defendants' small claims cases are barred: (1) due to doctrine of laches; (2) because the principal debtors were dissolved corporations; (3) because some of the Plaintiffs did not sign the Lease/ Guaranty Agreements; and (4) because the Guaranty Agreements are illusory due to the fact that the debtor and the guarantor are the same person. The Defendants argue that all four sub-classes should be dismissed.

The Plaintiffs initially submit that as a result of their state court cases being barred by the doctrine of laches, that Pushpin violated the ICFA by instituting and prosecuting the collection actions. The doctrine of laches is an equitable counterpart to the legal statute of limitations, which prevents the initiation of stale claims in equity and the injustice resulting from having to defend against such claims. *Equal Employment Opportunity Commission v. Dresser Industries, Inc.,* 668 F.2d 1199, 1201 (11th Cir. 1982). Laches is principally a question of the inequity of permitting a claim to be enforced. *Lingenfelter v. Keystone Consol. Ind., Inc.*, 691 F.2d 339, 340 (7th Cir. 1982). The Defendants highlight that the doctrine of laches is merely a defense and not a cause of action. *See Blue Water Partners, Inc., v. Edwin D. Mason, Foley and Lardner*, 975 N.E.2d 284, 296 (Ill. App. Ct. 2012). Although not apparent from the Plaintiffs' SAC it appears that the doctrine of laches was used as an affirmative defense in the previous Illinois small claims collection actions filed by Pushpin. The Plaintiffs seem to argue that since the doctrine of laches was submitted

as a successful defense in the previous collection cases, that the doctrine of laches presently makes Pushpin's past enforcement unfair under the ICFA.

In Illinois, the applicable statute of limitations on a written guaranty is ten years. 735 ILCS 5/13–206. The Plaintiffs' SAC states that Pushpin initiated the underlying collection cases "almost ten years after the debts allegedly occurred" and therefore Pushpins filing of suit was permissibly within the 10 year time period. Since the state court collection cases were filed within the applicable statute of limitations, the Plaintiffs must establish that the Defendants proceeding in light of the equitable bar imposed by the doctrine of laches is unfair under the ICFA. The Plaintiffs have not established in their SAC or submitted in their response to the Defendants' motion to dismiss how the Defendants' actions are unfair. Since the Defendants brought the state court collection cases within the permitted 10 year time period and the Plaintiffs have failed to enlighten the Court on the inequity of Pushpin's actions, the Court cannot find that the Defendants' actions are unfair. Additionally, the manner in which the Plaintiffs claim is structured is temporally flawed. The Plaintiffs assert that the *initiation* of the 3,000 small claims suits were barred by the doctrine of laches. However, any success the state court defendants had in utilizing the doctrine of laches as an affirmative defense came after a judicial determination concerning the merits of the small claims actions. Therefore, the *initiation* of the claims was not unlawful and the viability of the doctrine of laches was only determined *after* Pushpin filed suit. Thus, the Plaintiffs cannot proceed with

14

their claim that the equitable doctrine of laches barred the initiation of the Illinois small claims suits.

The Plaintiffs' next sub-class contends that the 3,000 collection cases were barred because the Lessors were dissolved corporations.  It is well-established that a guaranty is an independent obligation separate from the underlying contract. *Colonial Am. Nat'l Bank v. Kosnoski*, 617 F.2d 1025, 1030–31 (4th Cir. 1980); *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 755 (N.D. Ill. Sept, 17 2012). "Guarantees invol[ve] duties and impos[e] responsibilities very different from those created by the original contract to which it is collateral." *Colonial Am. Nat'l Bank*, 617 F.2d at 1030–31. A guaranty is separate and distinct from the transfer of goods. *Id.* Although the limitations period for the collection of lease payments is four years, written guarantees are subject to the ten-year statute of limitations. 735 ILCS 5/13-206; *Armbrister*, 896 F. Supp. 2d at 755.  Under Illinois law, a guaranty is a "third party's promise to answer for payment on or fulfill an obligation if the person primarily liable fails to perform." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 519–20 (7th Cir. 2011) (quoting *Panno v. Nicolau,* 529 N.E.2d 95, 98 (Ill. App. Ct. 1988)).  The Plaintiffs extensively rely on *Riley Acqusitions, Inc. v. Drexler*, 946 N.E.2d 957 (Ill. App. Ct. 2011), for the proposition that the extinguishment of a lease holders obligations, through the dissolution of a corporation, nullifies the obligations of the guarantor.  *Riley* involved a borrower whose guarantor obligations were extinguished during bankruptcy.  The *Riley* court determined that even if there was an

absence of a principal (dissolved corporation) on the note, the guarantors may still be liable, depending on if the guaranty expressly provides for continuing liability. *Id.* at 964-65.

In interpreting the Guaranty Agreement included in the Plaintiffs' SAC, the Court applies general rules of contract construction. *AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). "Where the language of a contract is unequivocal, it must be carried out according to its language." *McLean Cnty. Bank v. Brokaw*, 519 N.E.2d 453, 456 (Ill. 1988). To the extent that there is any ambiguity in the language of the guaranty, it must be construed in the guarantor's favor. *Riley Acquisitions*, 946 N.E.2d 957, 965 ("[O]ur analysis must be guided by the well-established principle that a guarantor is a favorite of the law."). The Guaranty Agreement states, in pertinent part: ". . . the release and/or compromise of any obligation of Lessee or any other obligors and guarantors [does not] in any way releas[e] the undersigned from its obligation hereunder. This is a continuing guaranty . . . ." Reading the language of the Guaranty Agreement strictly in the Guarantor's favor, it is clear that the dissolution of a corporation, included In the Lease Agreement, does not terminate the obligations of the Guarantors. Therefore, the Plaintiffs cannot establish an ICFA violation based on the extinguishment of a guaranty due to the dissolution of a corporation. *See Grundstad v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999).

The Plaintiffs' third sub-class alleges that the Defendants' 3,000 small claims suits are barred because Johnson, Wein and McAnally did not sign the Lease/ Guaranty Agreements. Distinct from the Plaintiffs' previous claims, the Plaintiffs' allegations of forgery are akin to fraudulent practices, as opposed to their other claims which sound in unfair conduct. Allegations of fraud require a heightened pleading standard of Rule 9(b) when brought in federal court. *Najieb v. Chrysler-Plymouth*, 01 C 8295, 2002 WL 31906466, at *9 (N.D. Ill. Dec. 31, 2002); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (for allegations of "fraud under the ICFA, the heightened pleading standard of [Rule] 9(b) applies"). The Plaintiffs broadly assert the some of the signatures on the Lease/ Guaranty Agreements were forged without pleading with particularity the circumstances of the forgeries. Under the heightened pleading standard, the Plaintiffs have failed to allege an ICFA claim based on the alleged forgery of the Lease/ Guaranty Agreements by the Defendants.

Finally, the Plaintiffs' fourth sub-class alleges that many of the Defendants' 3,000 small claims suits are barred because the Guaranty Agreements are illusory due to the fact that the debtor and the guarantor are the same person. The two representatives for this subclass are Holton and Wein, whom provided personal guarantees for the Leases of the credit card processing machines related to an unspecified business. In operating a sole proprietorship, Holton and Wein were personally liable for its debts. *GMAC, LLC v. Hillquist*, 652 F. Supp. 2d 908, 919

(N.D. Ill. Aug. 19, 2009). If a person guarantees the debt of the sole proprietorship, he is guaranteeing debts which he is already liable for, making the guaranty meaningless. *Id.* (citing *Packard Bell Elec. Corp. v. Ets–Hokin*, 509 F.2d 634, 637 (7th Cir. 1975)).

The cases relied on by the Plaintiffs stand for the proposition that due to the financial obligations of a sole proprietor a personal guaranty on the same debt is superfluous. *GMAC, LLC*, 652 F.Supp.2d at 919. Even though a guaranty may be "meaningless" does not mean that it is unenforceable, as suggested by the Plaintiffs. Therefore, it is not unfair that Pushpin pursued the Lease/ Guaranty Agreements for the collection of an outstanding debt, secured by the Guaranty Agreement, which was valid.

Furthermore, the Plaintiffs' veiled suggestion that Pushpin deceptively misrepresented the nature of Holton and Wein's Guaranty Agreements as being enforceable would require a heightened pleading standard of Rule 9(b). *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 794–95 (7th Cir. 2004). The Plaintiffs have failed to allege an actual misrepresentation communicated by the Defendants. The Plaintiffs must produce specific misrepresentations made by *specific* Defendants, as "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Accordingly, the Plaintiffs have failed to sufficiently allege an ICFA claim for Holton and Wein, who acted as the principal debtor and guarantor.

The Plaintiffs also argue that the original Lessor GlobalTech Leasing, Inc. never assigned its claims to any party, therefore rendering collection of any outstanding balance improper. However, the Defendants have attached to their motion to dismiss the GlobalTech Leasing, Inc.'s Assignment Agreement from CIT Financial on March 24, 2003.[1] The Defendants have established the validity of the assignment from CIT Financial to GlobalTech Leasing, Inc., which eviscerates the Plaintiffs' claim. The Plaintiffs cannot proceed with their ICFA claim based on CIT Financial's faulty assignment to GlobalTech Leasing, Inc. The Plaintiffs have failed to establish that any sub-class constitutes an ICFA violation. Accordingly, the Court grants the Defendants' motion to dismiss Count II in its entirety.

### C. Count III-ICFA

The Defendants contend that the Plaintiffs cannot establish a cause of action under the ICFA based on a violation of the ICAA, as it was in place during the Defendants conduct from 2002-2005. The Plaintiffs allege that the Defendants violated the ICAA by failing to register as a debt collection agency. It is alleged that the Defendants' failure to register as a debt collection agency voids any judgment made pursuant to the small claims collection activity. It is Pushpin's collection of a void debt that the Plaintiffs contend is an ICFA violation.

---

[1] The Court considers the Defendants' attachment due to the validity of GlobalTech Leasing, Inc.'s Assignment Agreement is contested by the Plaintiffs' SAC. *188 LLC v. Trinity Indus., Inc*., 300 F.3d 730, 735 (7th Cir. 2012).

Initially, the Defendants contend that they are not a debt collection agency and

fall outside of reach of the ICAA. The purpose of the ICAA is to regulate collection

agency practices and protect consumers against debt collection abuse. 225 Ill. Comp.

Stat 425/1a. The ICAA was amended on January 1, 2008 to "harmonize state law

with federal law and thereby provide better protections for Illinois consumers."

Transcript of Illinois Senate, 95th Gen. Assemb., Sess. No. 28, at 51 (April 19, 2007)

(statement of Sen. Don Harmon). The amended version of the ICAA defines "debt

collector" or "collection agency" as "any person who, in the ordinary course of

business, regularly, on behalf of himself or herself or others, engages in debt

collection." 225 Ill. Comp. Stat. 425/2. This was a change from an earlier version of

the ICAA, which defined a collection agency as "any person, association, partnership,

or corporation who, for compensation, either contingent or otherwise, or for other

valuable consideration, offers services to collect an alleged delinquent debt." 225

ILCS 425/2.02. (repealed Jan. 1, 2008). The pre-amendment ICAA further provided

that a person or corporation acts as a collection agency when it "(a) engages in the

business of collection for others of any account bill or other indebtedness; (b)

receives, by assignment or otherwise, accounts, bills, or other indebtedness ... (d) buys

accounts, bills or other indebtedness with recourse and engages in collecting the

same." 225 ILCS 425/3 (repealed Jan. 1, 2008). The 2008 amendment to the ICAA is

silent on the revised version's application to collection activities made prior to the

amendment. Therefore, in the absence of express language requiring the amendments

to be applied retroactively, the pre-2008 ICAA is applicable in the case at bar. *See Moore v. Jackson Park Hosp.*, 447 N.E.2d 408, 415 (Ill. 1983) ("The intent of the legislature that the amendment should apply retroactively is revealed in the language of the amendment.").

Initially, Pushpin contends that they are not a collection agency under the pre-amendment ICAA. At this juncture, the Court is not in a position to determine parameters of the legal relationship between Pushpin and the Plaintiffs when the debts were incurred between 2002 and 2005 and must rely on the well-pled facts contained in the Plaintiffs' SAC. The Plaintiffs have pled that CIT Financial assigned its claims under the Lease Agreements of the credit processing machines to "debt buying collection agencies" like Pushpin. Furthermore, the Plaintiffs allege that the Lease/ Guaranty Agreements were signed and the corollary debts were incurred between 2002 and 2005. These allegations, if proven true, would establish that Pushpin is a collection agency as defined by the ICAA. *See People ex rel. Daley*, 585 N.E.2d at 60 (Ill. 1992). For present purposes, the Plaintiffs have sufficiently pled that CIT Financial and Pushpin engaged in debt collection activities that fall under the pre-amendment ICAA definition of a collection agency.

The Defendants also contend the commercial debts sought in the state small claims cases are beyond the coverage of the ICAA, which only applies to consumer debts. The pre-amendment ICAA does not define "debt," "indebtedness," "account," "bill," or "claim." In the absence of a definition, the Illinois Supreme Court found

that the ICAA "does not explicitly exclude any type of debt or amount owed from its

purview. Although the legislature exempted certain types of *institutions* from the

control of the [ICAA], it did not exempt any type of *debt,* thereby indicating an intent

to include all types of debts or amounts owed." *People ex rel. Daley*, 585 N.E.2d at 51

(emphasis in original). The broad interpretation of debts covered by the pre-

amendment ICAA comfortably allows for the inclusion of the Lease/ Guaranty

Agreements at issue in the case at bar.

Having determined that the ICAA is applicable to Pushpin, the Court will now

take up the Plaintiffs' assertion that a violation of the ICAA can serve as a basis for

their ICFA claim. The Illinois Supreme Court has held that the same acts that are

violations of the ICAA may also be violations of the ICFA. *See People ex rel. Daley*,

585 N.E.2d 51, 62; *see also Bradley v. Fairbanks*, 02 C 7786, 2003 WL 21011801, at

\*4 (N.D. Ill. May 5, 2003); *Perperas v. United Recovery Sys., Inc.,* 96 C 7693, 1997

WL 136326, at \*2-3 (N.D. Ill. Mar. 19, 1997). In *People ex. rel. Daley*, the Illinois

Supreme Court concluded that "debt collection practices are embraced by the

[ICFA]." *Id.* at 31. Although the *People ex. rel. Daley* court did not expressly address

whether a violation of the ICAA constituted a "per se violation" of the ICFA, a federal

district court in the Northern District of Illinois concluded that a deceptive or

misleading violation of the ICAA could constitute a violation of the ICFA. *See*

*Perperas*, 1997 WL 136326, at \*2-3 (in the absence of the ICAA being included in

the collection of consumer protection statutes enumerated in the ICFA as an automatic

violation, a violation of the ICAA must be deceptive or mislabeling in order to constitute a viable ICFA claim).

In the case at bar, the Plaintiffs' contend that Pushpin's "filing and prosecuting more than 3,000 small claims lawsuits" when they were not registered as a debt collection company constitutes an unfair practice under the ICFA. The Plaintiffs maintain that the judgments entered in the small claims collection cases are void, due to Pushpin's failure to register and therefore their pursuit of those void claims is an ICFA violation.

The Plaintiffs' theory of liability encounters an insurmountable hurdle in light of the recent Illinois Supreme Court decision in *LVNV Funding, LLC v. Trice*, 2015 IL 116129 (Ill. 2015). The court held that the failure of a collection company to register as a debt collection agency under the ICAA does not void a final judgment entered in the case. *Id.* The holding in *LVNV Funding, LLC v. Trice*, eviscerates the Plaintiffs' claim, which hinges on the void nature of the small claims judgments. It is worth noting that the Plaintiffs have intermittently mentioned in their SAC that a violation of the ICAA for failure to register is a Class A misdemeanor. 225 ILCS 425/14. Presumably, the Plaintiffs are relying on the criminal penalty assessed for unregistered debt collection activities, as a corollary assertion establishing an ICFA violation. Despite the criminal penalty assessed, the Plaintiffs fail to enunciate the correlation between a penalty assessed to a debt collection agency under the ICAA and the manner in which it translates into a violation of the ICFA.

Not only is the basis for the Defendants' claim flawed, the Defendants have failed to allege an element of their ICFA claim- the Defendants intended that the Plaintiffs rely on the deceptive or unfair practice. To establish this element, it is enough to allege that a defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act. *Wigod*, 673 F.3d at 547. The Plaintiffs' SAC lacks any indication that Pushpin's failure to register under the ICAA was done with the intent that the Plaintiffs rely on its unregistered status. Even if alleged, the Court finds that this assertion would make the Plaintiffs' claim unwieldy. Therefore, the Defendants' motion to dismiss Count III of the Plaintiffs' SAC is granted.

### D. Count IV-ICFA

The Plaintiffs allege that the Defendants violated the ICFA when they filed over 3,000 small claims suits against the Guarantors of the Lease Agreements. The Plaintiffs continue that the four-year statute of limitations for the Lease Agreements extinguished the Guarantor's obligations; therefore, the Defendants, actions unlawfully sought discharged debt.

A guaranty is an independent obligation, separate and distinct from the transfer of goods. *Colonial Am. Nat'l Bank*, 617 F.2d at 1030–31. Although the limitations period for the collection of amounts due under a lease is four years, written guarantees are subject to the ten-year statute of limitations, despite the fact that that the statute of limitations on the underlying debt has run. 735 ILCS 5/13-206; *Armbrister*, 896 F.Supp.2d at 755. The Plaintiffs' assertion that the running of the statute of

24

limitations on the Lease Agreements has a direct consequence on a Guarantor's obligations is inaccurate. For our purposes, the running of the statute of limitation on the Lease Agreements is immaterial. It is clear that Illinois law views guarantees as a separate obligation which has no bearing on the limitations period for a lease provision. *Cessna Fin. Corp. v. Brown*, 88 C 3369, 1995 WL 462190, at *1 (N.D. Ill. Aug. 3, 1995) (determining that a cause of action seeking enforcement of a guaranty was subject to a ten year statute of limitations). Due to the distinct nature of guarantees, they are subject to a ten year statute of limitations. 735 ILCS 5/13-206. The Plaintiffs asserted in their SAC that the small claims suits were filed "almost ten years after the debts occurred." Because Pushpin filed suit within the applicable time period of ten years, the small claims suits seeking to enforce the Guaranty Agreements were valid. The Plaintiffs have failed to establish their ICFA claim. The Court grants the Defendants' motion to dismiss Count IV.

The Court grants the Defendants' motion to dismiss the Plaintiffs' ICFA claims enumerated in Counts I, II, III and IV.

## II. Count V- Abuse of Process Claim

The Defendants posit that the Plaintiffs have failed to sufficiently allege an abuse of process claim. "The *only* elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the

proceedings." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004)

(emphasis in original).

The Defendants contend that the Plaintiffs have failed to allege that the small

claims cases were brought for an ulterior purpose other than the collection money.

"In order to satisfy the first element, a plaintiff must plead facts that show that the

defendant instituted proceedings against him for an improper purpose, such as

extortion, intimidation, or embarrassment." *Id.* The Plaintiffs counter that the

initiation of the 3,000 small claims lawsuits which were pursued in violations of the

ICFA and ICAA, constitute an improper purpose. The Plaintiffs have not alleged that

the small claims lawsuits were brought for an ulterior purpose, as opposed to the

alleged unlawful nature of the lawsuits. In the absence of some nefarious motive or

purpose, the Plaintiffs have failed to sufficiently plead the first element of an abuse of

process claim.

Assuming arguendo that the Plaintiffs had sufficiently pled an ulterior purpose

of the Defendants' action, they still fail to allege the second element of an abuse of

process claim. In order to satisfy the second element, the plaintiff must plead facts

that show a misapplication of process, or, in other words, the plaintiff must show that

the process was used to accomplish some result that is beyond the purview of the

process. *See Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N.E.2d 925, 930

(Ill. App. Ct. 2003). When process is used only for its intended purpose, there has

been no misapplication of process. *Id.* The Plaintiffs have not alleged that the

Defendants filed the small claims suits to accomplish some objective that extended beyond the purview of their debt collection activities. The Court grants the Defendants' motion to dismiss Count V.

### III. Count VI- Malicious Prosecution Claim

The Defendants assert that the Plaintiffs have failed to sufficiently plead a malicious prosecution claim. A party asserting a cause of action for malicious prosecution in Illinois must allege facts establishing: (1) "that the defendant instituted the underlying suit without probable cause and with malice"; (2) "that the former action was terminated in the plaintiff's favor," and (3) "that as a result of the underlying action the plaintiff suffered a special injury beyond the usual expense, time or annoyance in defending a lawsuit." *Miller v. Rosenberg*, 749 N.E.2d 946, 952 (Ill. 2001).

The Defendants specifically contend that the Plaintiffs have failed to allege that they suffered a "special injury beyond the damages generally sustained in defending a lawsuit." *Harmon v. Gordon*, 712 F.3d 1044, 1056 (7th Cir. 2013). The Plaintiffs allege in their SAC that they suffered special injuries by filling the small claim lawsuits against non-residents, requiring travel and defense costs. The Plaintiffs' alleged special injury does not rise to the level of "special damage[s] beyond the usual expense, time, or annoyance in defending a lawsuit." *Id.* The Plaintiffs have failed to plead that they incurred a special injury and therefore have not sufficiently established

a malicious prosecution claim. The Court grants the Defendants' motion to dismiss

Count VI.

## CONCLUSION

For the aforementioned reasons, the Court grants the Defendants' motion to

dismiss Counts I, II, III, IV, V, and VI of the Plaintiffs' SAC.


Date: 3/23/2015

_____
Charles P. Kocoras
United States District Court Judge