**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL B. JOHNSON,<br>on behalf of himself and on behalf of<br>similarly situated plaintiffs, *et al*.,<br><br>       Plaintiffs,<br><br>       v.<br><br>PUSHPIN HOLDINGS, LLC, JAY<br>COHEN, LEONARD MEZEI,<br>ARI MADOFF, ALISHA ROSS,<br>LOUISA TATBAK, SHAUN<br>REDWOOD, GCN HOLDINGS, LLC,<br>and CIT FINANCIAL USA, INC.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)     13 C 7468<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, District Judge:

Now before the Court is Plaintiffs' Motion for Reconsideration (Dkt. 111) of the Court's March 23, 2015 Memorandum Opinion (Dkt. 105) dismissing all claims in Plaintiff's Second Amended Class Action Complaint (Dkt. 73) pursuant to Fed. R. Civ. P. 12(b)(6). Also before the Court is Plaintiffs' Motion for Leave to Supplement the Record (Dkt. 106), seeking to introduce various state court orders and transcripts from certain related small claims actions brought by Defendant Pushpin Holdings, LLC ("Pushpin") in the Circuit Court of Cook County against the named Plaintiffs here ("Plaintiffs"). For the following reasons, Plaintiffs' Motion to Supplement (Dkt. 106) is granted, and their Motion for Reconsideration (Dkt. 111) is denied.

## BACKGROUND

The claims alleged in Plaintiffs' Second Amended Class Action Complaint ("Complaint" or "Compl.") are described in greater detail in the Court's March 23 Opinion (Dkt. 105), with which familiarity is assumed. In sum, the Complaint alleges that New York based Pushpin (owned and controlled by Defendants Cohen and Mezei) improperly engaged in debt collection activity in Illinois—without being licensed as a foreign company doing business, or registered as a debt collection agency, in Illinois—by filing over 3,000 allegedly meritless small claims lawsuits in the Circuit Court of Cook County against the named Plaintiffs herein and similarly situated individuals. Compl., Dkt. 73, ¶¶ 2-5, 9-10, 18, 46-47.

According to the Complaint, Pushpin filed these cases seeking to collect under certain "Guaranty Agreements" executed in connection with "Lease finance agreements" used by Defendant CIT Financial to market credit card processing machines to consumers and businesses throughout the United States prior to 2003. *Id.* at ¶¶ 22-27, 34. The Complaint alleges that Defendant GCN Holdings (also owned and controlled by Cohen and Mezei) acquired the debt owed under these Lease and Guaranty agreements, and transferred the collection responsibilities in connection therewith to Pushpin, which then sued more than 3,000 Guarantors under these agreements between March 2010 and November 2014. *Id.* at ¶¶ 34, 38, 40, 44. According to the Complaint, Defendant Ari Madoff filed those cases as Pushpin's attorney "with knowledge that the lawsuits were without merit." *Id.* at ¶ 47.

Plaintiffs' Complaint asserts several theories to support their allegation that the small claims cases Pushpin filed against them lacked merit (which theories correspondingly delineate Plaintiffs' putative class and subclasses). Plaintiffs contend that: (1) "Any Judgment entered in an action filed by a party not registered or licensed under the Illinois Collection Agency Act, when required to do so, is void," *id*. at ¶ 172; (2) "Illinois law precludes a Creditor from collecting from a Guarantor when the obligations of the Principal Debtor have been discharged or terminated," and thus where (as alleged here) the claims against the principal debtor "Lessees" are "barred by the four-year statute of limitations," *id*. at ¶ 150; (3) Illinois law similarly precludes relief against a guarantor where the principal debtor "is a corporation which was dissolved more than five years before the small claims Complaint was filed," and thus after "the time for winding up its affairs has passed," again because the creditor may no longer "recover against the Principal Debtor," *id*. at ¶¶ 148, 164; (4) the Guaranty Agreements asserted against some named Plaintiffs (and some putative plaintiffs) were "executed by unauthorized people" (*i.e.* "were forged"), *id*. at ¶¶ 30, 148; and (5) where "the Lessee and the Guarantor are the same person," the "Guaranty Agreements are illusory and unenforceable." *Id*. at ¶¶ 148, 163.

Based on these theories, Plaintiffs' Complaint purported to assert claims for: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts II-IV); (2) abuse of process (Count V); and (3) malicious prosecution (Count VI). *Id*. at ¶¶ 153-91. The Court's March 23 Opinion concluded

that each of these claims failed as a matter of law, and therefore granted Defendants'

motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See*

Dkts. 89, 105. Plaintiffs now seek reconsideration.[1] And to bolster that request (and

apparently anticipating an appeal), Plaintiffs also seek leave to introduce several state

court orders and transcripts from the small claims cases filed by Pushpin against the

named Plaintiffs here. *See* Supp. Mem., Dkt. 107, at 2 ("Motions to supplement the

Record should first be presented to the District Court, when possible.").

According to Plaintiffs, these materials "add context to this Court's discussion

of the status of the small claims cases" and "context to the allegations that Final

Judgments have been entered in favor of the current Plaintiffs (Defendants in the

small claims cases) as alleged in" Plaintiffs' Complaint. *Id*. at 3. But while these

materials may add context to Plaintiffs' allegations, they add no strength to Plaintiffs'

claims. Nor do they mitigate the admissions in Plaintiffs' Complaint demonstrating

that the legal theories underlying their ICFA claims here were met with a cold

reception when asserted as defenses to Pushpin's small claims in state court:

---

[1] The Court's March 23 Opinion also rejected several additional theories alleged by Plaintiffs as bases for Defendants' ICFA liability, for which Plaintiffs do not seek reconsideration: (1) that the small claims complaints Pushpin filed "fail to allege facts establishing standing of Pushpin" to sue, Compl., Dkt. 73, at ¶ 45; (2) that the claims Pushpin filed were "barred by the Doctrine of Laches," *id*. at ¶ 161; and (3) that the Lease and Guaranty agreements "are void, unlawful, and unenforceable" due to forum selection, venue, and other provisions amounting to "disguised unlawful penalties for breach of contract, *id*. at ¶¶ 155-59. *See* Opinion, Dkt. 105, at 10-15, 19; Dkts. 111-12. None of these theories nor Count I of Plaintiffs' Complaint (which relied on the last of these theories) is addressed herein.

- "Colleen Kitchens retained an attorney to defend the Complaint and filed a Motion to Dismiss, which was denied," Compl., Dkt. 73, ¶ 61;

- "Alicia Holton retained an attorney who filed a Motion to Dismiss. The Motion to Dismiss was denied," *id.* at ¶ 70;

- "Robert Rotella retained an attorney to defend the small claims case and filed a Motion to Dismiss, which was denied," *id.* at ¶ 77;

- "Stephen Garcia-Agosto retained an attorney to defend the small claims case. His Motion to Dismiss was argued and denied," *id*. at ¶ 83;

- "Erik Rinkoff retained an attorney who filed a Motion to Dismiss, which was argued and denied." *Id*. at ¶ 101.

Plaintiffs' imply that this spate of harmful rulings ended when one state judge who was originally unreceptive to Plaintiffs' arguments later changed her mind "while ruling on a similar motion" in a later case, and concluded "that she should have granted the Motions to Dismiss in previous cases." *Id*. at ¶¶ 65, 71, 77, 83, 101. Plaintiffs' motion to supplement now seeks to introduce the transcripts and orders related to that reversal. *See* Supp. Mot., Dkt. 106, ¶ 6. But this information is hardly new. As the foregoing paragraphs of Plaintiff's Complaint explain, this sea change occurred during a hearing on November 17, 2014, and the transcript from this hearing, which Plaintiffs now seek to add to the record here, is dated January 12, *see* Dkt. 106-2, at 21—all before Plaintiffs filed their brief in opposition to Defendants' Motion to Dismiss this case on January 19, 2015. So why not cite it earlier? Because the transcript from this November 17 hearing reveals that, while adopting one of Plaintiffs' arguments (precluding recovery against a guarantor if the claim against the principal debtor is time-barred), the state judge continued to reject Plaintiffs' other

arguments as "incredibly weak," adding that she "would never grant the motion on those grounds," and that "in the prior cases that [she] ruled in, it was even worse," particularly the argument (among those Plaintiffs now ask to be reconsidered) that "Pushpin Holdings is a debt collector and isn't registered." *Id*. at 11, 17.

The other transcripts Plaintiffs seek to introduce are a similarly mixed bag. For instance, when the same state judge later vacated one of her earlier orders rejecting Plaintiffs' statute of limitations defense (in the reversal on which Plaintiffs rely so heavily here), she did so with ambivalence: "It's an interesting question, and we're waiting for you to take it up on appeal. . . . I looked at it one way in the beginning, but I thought better of it. And I think this is right, but I could be wrong. There's nothing directly on point about the statute of the limitations running. We've got other scenarios." Dkt. 120-4 (Shoate Tr.), at 5-6. Thus, far from holding that Pushpin's claims were "meritless" as Plaintiffs contend here, Dkt. 112 at 3, the state judge on whom Plaintiffs now hinge their claims credited Pushpin's position as "somewhat reasonable." *Id*. at 3-4. And when the same state judge considered a different Plaintiff's forgery defense (in another ruling Plaintiffs assert here), she did so with skepticism: "Well, personally, I wasn't really impressed by this affidavit. It's a little flimsy, and it might be really crafty wording." Dkt. 106-5 (Wein Evans Tr.), at 6. Nevertheless, because the affidavit was "uncontested"—though Pushpin's counsel explained that a small claim allows for no discovery without leave of court—the judge dismissed the case anyway. *Id.* at 6-7.

Based on these state court rulings ultimately accepting their statute of limitations defense (in some cases) and their forgery defense (in one other), Plaintiffs now seek reconsideration of this Court's March 23 Opinion which rejected those arguments as bases for Plaintiffs' ICFA claims here. Plaintiffs posit that this Court "is bound" by those state court rulings "under the principles of *res judicata*, collateral estoppel, and the *Rooker-Feldman Doctrine*," and, indeed, that the Court "lacked subject matter jurisdiction" under *Rooker Feldman* "to enter a contrary ruling" on the same issues. Mot., Dkt. 111, ¶¶ 7, 8; Mem., Dkt. 112, at 5-7; Reply, Dkt. 119, at 7-9. Plaintiffs then go on to argue (in a curious twist of logic) that the Court also committed manifest error by rejecting other bases for Plaintiffs' ICFA claims, which one of the same state judges rejected as "incredibly weak"—including Plaintiffs' contention that "Pushpin violated the ICAA and therefore the ICFA by filing 3,000 small claims cases without registering as a debt buyer/debt collector," Dkt. 112, at 3— which the same judge found "even worse." *See* Dkt. 106-2, at 11.

Thus, according to Plaintiffs, this Court is precluded from disagreeing with any point that Plaintiffs won in state court, but also committed manifest error by rejecting the arguments they lost. The Court disagrees on both fronts. As explained below, Plaintiffs' assertion of the *Rooker-Feldman* doctrine is misplaced, and the requirements of *res judicata* and collateral estoppel are similarly unmet here. The Court also disagrees that it committed any error in concluding that Plaintiffs' Complaint fails to allege a cognizable claim under the ICFA.

## LEGAL STANDARDS

Plaintiffs style their reconsideration request as a "Motion for Reconsideration and to Alter and/or Amend the Judgment and Dismissal Order under Fed. R. Civ. P. 59(a) and (e) and 52(b)." *See* Dkt. 111. The reference to Rule 59(a) is perplexing, since the Court's March 23 Opinion arose under Rule 12(b)(6), not the trial Rule 59(a) contemplates. Defendants, on the other hand, assert that the motion should be treated solely under Rule 59(e). Def. Resp., Dkt. 116, at 4 n.2.

Although the Court had not entered a judgment order after its March 23 Opinion when Plaintiffs filed the instant motion, a motion to "alter or amend" (or some "synonym" such as "reconsider") still may be brought under Rule 59(e) "even if the Rule 58 judgment order has not yet been made or docketed." *Borrero v. City of Chi.*, 456 F.3d 698, 699-700 (7th Cir. 2006). "To establish relief under Rule 59(e), a 'movant must demonstrate a manifest error of law or fact or present newly discovered evidence.'" *Vesley v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011)). A district court also retains "discretion to reconsider 'an interlocutory judgment or order at any time prior to final judgment.'" *See Mintz v. Caterpillar Inc.*, No. 14-1881, -- F.3d --, 2015 WL 3529396, at *5 (7th Cir. June 5, 2015) (treating motion to vacate summary judgment as motion to reconsider interlocutory judgment or order because "no final judgment had been entered yet") (quoting C.A. Wright, *et al.*, *Federal Practice and Procedure Civil* § 2852 (3d ed. 1998)). Such a motion "is governed by the doctrine of the law of

the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous," *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006), or "a significant change in the law or facts since the parties presented the issue to the court." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

Plaintiffs' Verified Motion for Leave to Supplement the Record (Dkt. 106) also points in multiple directions. Plaintiffs' opening memorandum cites decisions authorizing both consideration of documents attached to a motion to dismiss that are "referred to in the plaintiff's complaint and are central to his claim," *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002), and supplementation of an appellate record. *See* Dkt. 107, at 2-3. Plaintiffs' reply then argues for "judicial notice" of the proffered state court orders and transcripts, and further cites Fed. R. Civ. P. 15(a)'s instruction that a district court "should freely give leave" to amend "when justice so requires." Dkt. 118, at 2-4. Putting aside the lateness of Plaintiffs' assertion of Rule 15(a),[2] their request to amend—to add the documents as "an exhibit" to their Complaint "for all purposes" under Fed. R. Civ. P. 10(c)—is unnecessary.

The instant motions seek reconsideration of a dismissal under Rule 12(b)(6), for which the Court may consider "documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v.*

---

[2] *See Nationwide Ins. Co. v. Central Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013) (arguments first raised in a reply brief are waived).

*City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The state court orders and transcripts that Plaintiffs offer in their motion to supplement are both referred to in their Complaint (*see* ¶¶ 65, 71, 77, 83, 101) and subject to proper judicial notice, because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b) and acknowledging proper judicial notice of court records, including transcripts).[3] These records, therefore, may be considered in a Rule 12(b)(6) motion to dismiss, and likewise in a motion to reconsider a ruling granting such a motion.

Accordingly, although the Court is "not obliged" to consider "belatedly submitted" materials that were available prior to its March 23 Opinion granting the motion to dismiss in this case, *see Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995), in the interest of completeness, the Court nonetheless will consider all of the state court orders and transcripts Plaintiffs have submitted (*see* Dkts. 106 and 120), regardless of whether they were issued before or after the Court's Opinion. As shown below, however, those materials do not warrant reconsideration of the conclusions in that Opinion. Instead, they compel the same result the Court originally reached.

---

[3] *See also Spaine v. Comm. Contacts, Inc.*, 756 F.3d 542, 545 (7th Cir. 2014) ("we may take judicial notice of publicly available records of court proceedings," including transcripts) (citing *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (acknowledging proper judicial notice of transcripts in public record on Rule 12(c) motion for judgment on the pleadings)); *Ray v. City of Chi.*, 629 F.3d 660, 665 (7th Cir. 2011) (court may take judicial notice of transcript from another proceeding when deciding motion to dismiss).

**DISCUSSION**

## I.     Plaintiffs' Assertion that Pushpin's State Court Claims Violated the ICFA Because Claims against the Principal Debtors were Time-Barred

The Court begins with Plaintiffs' jurisdictional attack under the *Rooker-Feldman* doctrine (as a means of fortifying their reliance on *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 946 N.E.2d 957 (1st Dist. 2011), to support their ICFA claims).   According to Plaintiffs, the state small claims court accepted Plaintiffs' argument that *Riley Acquisitions* precluded Pushpin's state court claims against them because relief against the principal debtors was time-barred, and this Court "lacked subject matter jurisdiction to enter a contrary ruling on the same issue under the *Rooker Feldman Doctrine.*"  Reply, Dkt. 119, at 7.  Not so.

The Seventh Circuit has made clear that *Rooker-Feldman* is "narrowly confined" to cases brought by "state-court losers" who are "attacking the judgment itself."  *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 705 (7th Cir. 2014) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993)).  Thus, as the Seventh Circuit held in this case, the doctrine does not apply where (as here) the party who lost in state court "does not seek to disturb the judgment of the state court." *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014).  So long as the federal court action "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached," *Rooker–Feldman*, does not apply.  *Saudi Basic Indus.*, 544 U.S. at 293 (brackets omitted, quoting *GASH Assocs.*, 995 F.2d at

728).  Nor does the doctrine apply where (again, as here) "a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id*. at 292-93.  In that case (as here), disposition of the federal case "would be governed by preclusion law," which "is not a jurisdictional matter." *Id*.

Plaintiffs are thus relegated to *res judicata* and collateral estoppel in their effort to preclude this Court from disagreeing with the state small claims court on the effect of *Riley Acquisitions*.  But these doctrines are likewise inapplicable.  As to the first, *res judicata* (or "claim preclusion," as Plaintiffs' assert here) "bars any subsequent actions between the same parties or their privies on the same cause of action,"—*i.e.*, that "arise from a single group of operative facts, regardless of whether they assert different theories of relief"—including both "matters that were actually decided in the original action" and "matters that could have been decided." *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016-17 (7th Cir. 2014); *see also* Mem., Dkt. 112, at 5-6.  But Defendants have brought no such "cause of action."  The potential for claim preclusion in this case, therefore, would be against the claims now brought by Plaintiffs (counterclaims they could have brought in state court), not Defendants.[4]

---

[4] Plaintiffs' contention that *res judicata* does not bar their claims here because "Illinois does not have a compulsory counterclaim rule," Mem., Dkt. 112 at 6, "misses the mark." *Amari Co., Inc. v. Burgess*, 955 F. Supp. 2d 868, 879 n.6 (N.D. Ill. 2013). "Under Illinois law, any claim that could have been brought, whether it had to be or not, is barred by *res judicata* if the doctrine applies." *Id.*; *Cummins, Inc. v. TAS Distrib. Co.*, 700 F.3d 1329, 1337 (Fed. Cir. 2012) (same). *See also Ruffino v. Bank of Am, N.A.*, No. 13 C 50124, 2013 WL 5519456, at *4-5 (N.D. Ill. Oct. 3, 2013) (ICFA claim barred by *res judicata* because it was "one that plaintiff could have raised in the state court foreclosure action").

This leaves collateral estoppel, which bars relitigation of an issue determined in a prior case, provided (among other requirements) the previously determined issue is "identical to the one presented in the suit in question." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 431 (7th Cir. 2009). Here, however, the issue decided in the small claims actions—that Pushpin "can't go after" the guarantor "because the statute has run" against the principal debtor, Dkt. 120-4 (Shoate Tr.) at 4-6—differs substantially from the issue decided by this Court's March 23 Opinion—that Pushpin's claims against the guarantors were not "unfair under the ICFA." Dkt. 105, at 14. Nor do these rulings conflict. To the contrary, this Court's conclusion that Pushpin's claims were not unfair jibes perfectly with one state judge's conclusion that Pushpin's position was "somewhat reasonable," since it "isn't as if the underlying cause of action or action on the lease is truly barred necessarily." Dkt. 120-4 (Shoate Tr.), at 3-6. *Id*. And to the extent this Court's reasoning differs from the state court's (which incorrectly applied *Riley Acquisitions*), there are compelling reasons that collateral estoppel does not preclude it. *See* Mem., Dkt. 112, at 6-7.

As even Plaintiffs concede, collateral estoppel "is an equitable doctrine," *id.* at 6, meaning that "the doctrine should not be applied unless it is clear that no unfairness will result to the party that would be estopped." *Goodwin v. Bd. of Trs. of Univ. of Ill.*, 442 F.3d 611, 621 (7th Cir. 2006). "In determining whether unfairness results, courts should look to the party's incentive to litigate the issue in the prior action," *id*., particularly where (as here) "the amount at stake in the first litigation was

insignificant." *Talarico v. Dunlap*, 177 Ill. 2d 185, 192, 685 N.E.2d 325, 328 (1997). Plaintiffs' Complaint and the transcripts they now offer make clear that the small claims Pushpin brought incentivized neither side to litigate, fully through appeal in any single case, an issue that now affects 3,000 claims in this case.[5] The Illinois Supreme Court has denounced the application of collateral estoppel under such circumstances, because "forcing defendant to appeal in order to prevent application of estoppel in later cases is unfair and does not promote efficiency." *Herzog v. Lexington Twp.*, 167 Ill. 2d 288, 298, 657 N.E.2d 926, 931 (1995). This principle applies with particular force here, where one state judge, on which Plaintiffs now rely so heavily, openly acknowledged that her statute of limitations conclusion "could be wrong" and that she was "waiting" for Pushpin "to take it up on appeal," as there was (in her view) "nothing directly on point." Dkt. 120-4 (Shoate Tr.) at 5-6. But there was authority directly on point—a case against Pushpin itself—which held (contrary to the state court's conclusion) that "written guarantees are subject to the 10-year statute of limitations in 735 ILCS 5/13-206 despite the fact that the statute of limitations on the underlying debt has run." *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 755 (N.D. Ill. 2012).

---

[5] *See, e.g.*, Compl. ¶¶ 34, 105, 127, 139 ("the cost of defending the small claim cases exceeded the amount claimed"); Dkt. 120-3 (Garcia Tr.) at 5 ("The cost of defending these cases usually by out of state defendants is usually greater than the amount that is claimed"); Dkt. 106-5 (Wein Evans Tr.) at 5 ("It's a small claim, Judge. There's no discovery."); Dkt. 106-3 (Rinkoff Tr.) at 17 ("the absence of an appeal on a $1,200 case where my client doesn't want to pay for an appeal, isn't somehow to stop me from raising defenses").

The two small claims judges who addressed this question were nevertheless persuaded that the Illinois Appellate Court's decision in *Riley Acquisitions* precludes relief against a guarantor where a claim directly against the principal debtor was outside the applicable limitations period, and, therefore, disregarded *Armbrister* as a "diametrically opposed" "Federal Court opinion" that could not "overrule Riley." *See*, *e.g.*, Dkt. 106-2 (Krier Tr.) at 12; Dkt. 106-3 (Rinkoff Tr.) at 9-10, 18; Dkt. 106-4 (Holton Tr.) at 17-18; Dkt. 106-7 (Canterbury Tr.) at 21. But *Riley* held no such thing. In fact, the *Riley* court expressly **declined** to "reach the alternative ground of the statute of limitations" and instead held only that relief was unavailable against the guarantor in that case due to the two principal debtors' "respective dissolution and release." *Riley Acquisitions*, 408 Ill. App. 3d at 403-04, 946 N.E.2d at 965-66. And Plaintiffs here did not succeed on their dissolution defense in state court, and did not assert release. *See* Dkt. 106-6 (Hixon Tr.) at 5; Dkt. 106-7 (Canterbury Tr.) at 5-7; Dkt. 106-8 (Marsh Tr.) at 6. Yet Plaintiffs' counsel in the state cases (and here) successfully argued to both state judges that *Riley* was "right on point" (it wasn't); that *Riley* came after *Armbrister* (it didn't); that *Riley* "doesn't even cite" *Armbrister* (it couldn't); and that *Armbrister* "doesn't address the issue" (it does). Dkt. 106-4 (Holton Tr.) at 16-17; Dkt. 106-3 (Rinkoff Tr.) at 15-16. This Court is not obliged to adopt the same unfounded assertions. *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1023 (7th Cir. 2006) (denying collateral estoppel effect to state court conclusions based on "unsound reasoning").

Nor is the Court disposed to disregard the plain language of the Guaranty agreements that Pushpin asserted against Plaintiffs in the small claims cases. Those agreements recite (1) "a continuing Guaranty," (2) that "unconditionally guarantees to Lessor the prompt payment when due of all Lessee's obligations to Lessor under the Lease," (3) that the Lessor is not "required to proceed against Lessee or the Property or enforce any other remedy before proceeding against" the Guarantor, (3) and that the Guarantor "consents to any extensions or modifications granted to Lessee and the release and/or compromise of any obligation of Lessee or any obligors and guarantors *without in any way releasing the undersigned from its obligations*." Dkt. 91-2 at 2 (emphasis added). Contrary to Plaintiffs' arguments, *Riley* expressly acknowledged that such a "continuing Guaranty" that allows for "release and/or compromise" of the principal debtor "without in any way releasing" the guarantor, *id.*, would *by its terms* survive a release of liability of the principal debtor. *Riley Acquisitions*, 408 Ill. App. 3d at 403, 946 N.E.2d at 965 (distinguishing a guaranty stating that the guarantor "is only liable on the guaranty contract when the principals have an obligation" from one "expressly stating" that the guarantor is liable "when the principal is not").

Accordingly, even under *Riley Acquisitions*, the Guaranty agreements that Pushpin asserted in state court explicitly allowed for claims against Plaintiffs where relief was nevertheless unavailable against the principal debtors (because it was time-barred or the principal debtor was dissolved more than five years before the complaint was filed). Indeed, Pushpin was "not required to proceed against" the principal debtor

or to "enforce any other remedy before proceeding against" the Guarantors. Dkt. 91-2 at 2. Any contrary conclusion by the state court was thus "unsound" and not entitled to collateral estoppel effect. *See Sornberger*, 434 F.3d at 1023. But regardless, this Court's conclusion that Pushpin's claims based on such unconditional guarantees did not violate the ICFA is consistent with both *Riley Acquisitions* and the state court's conclusion that Pushpin's claims were "somewhat reasonable" in any case. Dkt. 120-4 (Shoate Tr.), at 3-6. Plaintiffs' request to reconsider this Court's ruling based on *Riley* and the state court's dismissals is, therefore, denied.

## II. Plaintiffs' Assertion that Pushpin's State Court Claims Violated the ICFA Because Some Guaranty Agreements were Allegedly Forged

Plaintiffs' reconsideration request regarding dismissal of their forgery-based ICFA claim fails for similar reasons. Plaintiffs contend that the Court's ruling that Plaintiffs failed to allege such a claim adequately under Fed. R. Civ. P. 9(b) is again "contrary" to one of the state court's judgments "in violation of the principles of *res judicata*, collateral estoppel and the *Rooker-Feldman Doctrine*." Mem., Dkt. 112, at 7. But as explained above, *Rooker-Feldman* does not apply because this action preceded, and "does not seek to disturb," the state court's judgment. *See supra* Part I (citing *Saudi Basic Indus.*, 544 U.S. at 292; *Johnson*, 748 F.3d at 773). *Res judicata* does not apply because Defendants have brought no "cause of action" that was decided in the state court. *Walczak*, 739 F.3d at 1016-17. And collateral estoppel does not apply because the Court's conclusion addressed a different issue—*i.e.*,

whether Plaintiffs' ICFA allegations were pled with the specificity required by Rule 9(b)—than did the state court—*i.e.*, whether Pushpin's small claim against one particular Plaintiff (Krystyn Wein Evans) should be dismissed "because she did not sign the Guaranty Agreement."  Mem., Dkt. 112, at 6; *see also Hukic*, 588 F.3d at 431 (collateral estoppel requires issue "identical to the one presented in the suit in question").  But as importantly, the state court transcript Plaintiffs offer to support their forgery claim here further demonstrates the inequities of imposing collateral estoppel on this issue, both because Pushpin had little incentive or opportunity to litigate the point in small claims court, and because the state court's remarks, once again, make this Court's point.

While the state judge dismissed Pushpin's claim against Ms. Wein Evans based on her "uncontested affidavit," the judge also noted the affidavit's "flimsy" character and "crafty wording," and the need "to take her deposition" or request "her driver's license to see her signature."  Dkt. 106-5 (Wein Evans Tr.) at 5-7.  And although Pushpin's counsel explained that a small claim allows for no discovery without leave of court, lacking any contrary evidence, the state judge granted summary judgment in Ms. Wein Evans' favor nonetheless.  *See id.* ("that's the only evidence I have").  This colloquy demonstrates not merely a lack of incentive by Pushpin to litigate the issue fully in state court, but a lack of opportunity.  It would be wholly inequitable now to bind Pushpin in a class action to this single summary judgment ruling on a state court small claim—based on a "flimsy" affidavit, without the benefit of discovery to test it,

*see Herzog*, 167 Ill. 2d at 296, 657 N.E.2d at 930 (collateral estoppel inappropriate where "there may be procedural opportunities available in the subsequent case that could cause a different result")—particularly when a different state judge rejected the same forgery defense from a different Plaintiff (Kenneth Canterbury) because his affidavit, too, was "really unclear on this issue." Dkt. 106-7 (Canterbury Tr.) at 5-6.

This commentary by two state judges denigrating Plaintiffs' forgery defenses in state court as "flimsy," "crafty," and "really unclear" also demonstrates the inadequacy of Plaintiffs' forgery allegations here. Rule 9(b) plainly requires more to allege forgery in federal court, including "who forged the signature," "each person's role in the conspiracy," "or where or when this forgery took place." *See Fed. Deposit Ins. Co. v. Vann*, No. 11 C 3491, 2013 WL 704478, at *4 (Jan. 23, 2013). Plaintiffs do not dispute (nor could they) that their Complaint fails to provide such information. Indeed, Plaintiffs concede their failure to allege "who signed their names, when they were signed or where they were signed," Mot., Dkt. 111, at 8, but argue that such information is "peculiarly within the knowledge of the forgers and not the Plaintiffs." Mem., Dkt. 112, at 7. Such an excuse is unacceptable where (as here) a party to a financial transaction conveniently denies its signature on the document "ultimately used to obtain the financing" but not the transaction itself. *Vann*, 2013 WL 704478, at * 5; *see also* Compl., Dkt. 73, at ¶ 114 (alleging that Wein Evans "is the Lessee, under the fictitious name Wholesale Stop, and is also the Guarantor," and that the Guaranty is, therefore, "illusory because a party may not guarantee their own obligations").

Nor is this failing mitigated by the argument in Plaintiffs' brief that they have alleged other facts instead: *i.e.*, that some unidentified Defendants "used aggressive marketing practices accepting forgeries and unauthorized signatures" and then "filed multiple small claims cases, using false Affidavits attached to the Complaints" that were "prepared on an assembly-line basis with knowledge of the Defendants that the Affiants did not know the truth of the statements they were swearing to." Mem., Dkt. 112, at 7. For one thing, this story "impermissibly lumps" such unidentified "Defendants" together. *Vann*, 2013 WL 704478, at *4. But it also fails to allege "actual facts" regarding any Defendant filing any complaint against any Plaintiff based on a forged guaranty. *See Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 846-47 (N.D. Ill. 2013) ("Plaintiffs confuse their obligation to state a 'plausible' claim with the obligation to allege *actual facts*, not merely facts that may 'plausibly' be true. . . . instead of pleading facts, Plaintiffs speculate that the indorsement is forged because they appear not to have facts as to why or when the indorsement was made.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather, at most, Plaintiffs speculate that **some** Defendant **may** have filed a complaint based on a forged guaranty due to **some** Defendants' "marketing practices accepting forgeries and unauthorized signatures," because the supporting affiant "did not know the truth of the statements they were swearing to." "Such pleading-by-guesswork is improper." *Drobny*, 929 F. Supp. 2d at 847 ("speculative" allegations of "robo signed" and "forged" finance documents failed under Rule 9(b)).

## III.    Plaintiffs' Assertion that Pushpin "Violated the ICAA and therefore the ICFA"

Plaintiffs further challenge the Court's ruling that Pushpin's alleged failure to register as a debt collector under the Illinois Collection Agency Act ("ICAA") before suing Plaintiffs did not constitute "an unfair practice under the ICFA."  Dkt. 105, at 23-24.  But here again, the state court transcripts Plaintiffs now offer work against them on this issue.  Indeed, both state judges rejected this argument, one calling it "even worse" than the other "incredibly weak" arguments Plaintiffs raised in state court.  *See* Dkt. 106-2 (Krier Tr.) at 11; Dkt. 106-7 (Canterbury Tr.) at 10-11, 27; Dkt. 106-8 (Marsh Tr.) at 10.  This Court agrees with the state court's assessment.

As Plaintiffs' Complaint concedes, one obstacle they face is the ICAA's limitation in 2008 to "the collection of consumer debts," *see* Compl., Dkt. 73-1, ¶ 170 (citing 225 ILCS 425/2), which the Lease Agreements at issue here expressly state they are not.  *See* Dkt. 91-2 ("under no circumstances shall this Lease be construed as a consumer contract").  As Plaintiffs' Complaint also admits, Pushpin was formed in 2010, and thus engaged in no collection efforts regarding Plaintiffs before 2008, *see* Dkt. 73, ¶ 34, 44, leading the state court to hold that the ICAA did not apply to Pushpin's claims.  *See* Dkt. 106-7 (Canterbury Tr.) at 10-11, 27; Dkt. 106-8 (Marsh Tr.) at 10.  That conclusion debunks Plaintiffs' contention here that "Pushpin violated the ICAA and therefore the ICFA by filing 3,000 small claims cases without registering as a debt buyer/debt collector."  Mem., Dkt. 112, at 3.  Plaintiffs

nevertheless challenge this Court's holding that, even if Pushpin were required to register under the ICAA, its filing of claims against Plaintiffs without having done so was not an unfair practice under the ICFA. Dkt. 105 at 23. According to Plaintiffs, the Court erred by relying on the Illinois Supreme Court's holding in *LVNV Funding, LLC v. Trice*, 2015 IL 116129, 32 N.E.3d 553 (2015), that a judgment procured by an unregistered debt collector is not "void," because (also according to Plaintiffs) Pushpin's small claims cases against them constituted "3,000 Class A misdemeanors, in violation of the ICAA," and thus "an unfair practice irrespective of whether the resulting Default Judgments are void or voidable." Mem., Dkt. 112, at 4.

Again, this contention overlooks three state court rulings rejecting Plaintiffs' argument that Pushpin violated the ICAA by suing the Guarantors (Plaintiffs here) in those cases. *See* Dkt. 106-2 (Krier Tr.) at 11; Dkt. 106-7 (Canterbury Tr.) at 10-11, 27; Dkt. 106-8 (Marsh Tr.) at 10. But in any event, the Illinois Supreme Court expressly considered in *LVNV* the very argument Plaintiffs now make—that "the lack of a debt collection license" may be "a criminal offense"—and yet upheld the judgment and remanded the case "for confirmation" of the monetary award to the unregistered plaintiff. *LVNV*, 2015 IL 116129, ¶¶ 49, 52. Other Illinois decisions (both before and after *LVNV*) are to the same effect, holding that the complaints filed in such actions are valid, and the resulting judgments are not void.[6] This Court cannot

_____

[6] *See, e.g.*, *Deutsch Bank Nat'l Tr. v. Cichosz*, 2014 IL App (1st) 131387, ¶¶ 14-17, 19 N.E.3d 134, 138-39 (2014) (rejecting arguments that complaint filed by unregistered debt collection agency was a nullity and resulting judgment was void);

conclude that the filing of a valid complaint in pursuit of a judgment consistently enforced by Illinois courts (including the Illinois Supreme Court) constituted an unfair practice under the ICFA. Nor does that conclusion follow under *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951 (2002), as Plaintiffs now argue. While Plaintiffs are correct that *Robinson* does not require all three "*Sperry*" criteria to establish an unfair practice—(1) "offends public policy," (2) is "immoral, unethical, oppressive, or unscrupulous," and (3) "causes substantial injury to consumers," *id.* at 417-18, 775 N.E.2d 961—Plaintiffs argue only that Pushpin's conduct "offends public policy." Dkt. 112 at 5. And this argument, too, has been considered and rejected in the Illinois Courts. *See LVNV*, 2015 IL 116129 ¶ 3, -- N.E.3d -- (acknowledging "public policy" underlying ICAA but upholding judgment in favor of unregistered debt collector); *Deutsch Bank*, 2014 IL App (1st) 131387, ¶¶ 12-14, 19 N.E.3d at 137-38 (rejecting debtor's arguments that complaint filed by unregistered debt collection agency "is a nullity," that "this essentially was a violation of public policy," and that "the resulting judgment is void for public policy reasons").[7]

---

*JP Morgan Chase Bank, N.A. v. Ontiveros*, 2015 IL App (2d) 140145, ¶ 16, 27 N.E.3d 1027, 1032 (2015) (rejecting argument that "plaintiff's lack of proper licensing [as a "debt collector"] made its claim noncognizable"); *U.S. Bank Nat'l Ass'n v. Nwokobia*, 2015 IL App (3d) 130963-U, ¶ 39, 2015 WL 2232010, at *7 (2015) (unpublished) ("even if U.S. Bank had to register as a debt collector prior to filing this foreclosure action, its failure to do so would not have nullified the complaint and subsequent judgments thereon") (citing *Deutsche Bank*).

[7] Plaintiffs' companion contention that the Court further erred in requiring a reliance element for their ICFA claim based on this allegedly "unfair conduct," Dkt. 112 at 4, is similarly at odds with Illinois, and Seventh Circuit, case law. *See, e.g.,*

## IV. Plaintiffs' ICFA Claim Based on their "Illusory Guaranty" Agreements

Finally, Plaintiffs argue that the Court's March 23 Opinion erred also in rejecting their ICFA claim based on their own purportedly "Illusory" Guaranty Agreements. According to Plaintiffs, Pushpin violated the ICFA by suing to collect in "those cases where the Lessee is a sole proprietor who also signed as Guarantor," because a guaranty is a promise to pay the debt of a "third person," and any guaranty for which the guarantor and principal debtor are not "separate entities" (as Plaintiffs Holton and Wein Evans contend here) is "meaningless, illusory and unenforceable." Mot., Dkt. 111 at 4-5. This Court disagreed, *see* Dkt. 105 at 18, and still does.

Plaintiffs are not the first guarantors to claim that their signatures "impose no obligation," Dkt. 112 at 2, but the Illinois courts have rightly refused to hold such guarantees unenforceable on that basis. Rather, when confronted with the argument that a defendant guaranteed "its own debt," or signed in a capacity so as to "render the guaranty meaningless," the Illinois courts have instead concluded that "a genuine issue of material fact exists as to the capacity in which [the] defendant signed the guaranty agreement." *See*, *e.g.*, *Addison State Bank v. Nat'l Maint. Mgmt., Inc.*, 174 Ill. App. 3d 857, 860, 529 N.E.2d 30, 33 (2d Dist. 1988); *Zahl v. Krupa*, 365 Ill. App.

---

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (ICFA claim requires "defendant's intent that the plaintiff rely on the deceptive *or unfair* practice" (emphasis added)); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (same); *Galvan Nw. Mem. Hosp.*, 382 Ill. App. 3d 259, 263-64, 888 N.E.2d 529, 535 (1st Dist. 2008) (requiring "defendant's intent that the plaintiff rely on the **unfair or** deceptive practice" (emphasis added, citing *Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960)).

3d 653, 660, 850 N.E.2d 304, 311 (2d Dist. 2006) (reversing dismissal of claim on guaranty: "Where language in the document conflicts with the apparent representation by the officer's signature, an issue of fact is created." (quoting *Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996) (citing *Knightsbridge Realty Partners, Ltd.-75 v. Pace*, 101 Ill. App. 3d 49, 53, 427 N.E.2d 815, 819 (1st Dist. 1981))).[8] Indeed, that was exactly the conclusion reached by the state court in a case Pushpin filed against one such Guarantor here (Canterbury) who Plaintiffs conveniently neglect to mention in connection with this argument. *See* Dkt. 106-7 (Canterbury Tr.) at 26 ("I don't think the affidavit has satisfied you with respect to that question of fact").

These decisions demonstrate (as this Court's March 23 Opinion held) that the Guaranty Agreements Pushpin asserted were not unenforceable merely because the Lessee and Guarantor may have appeared to be the same person or entity. Rather, at the very least, such Agreements raised a factual issue as to the capacity in which those Guarantors signed those Agreements. These decisions also compel the conclusion (as the Court's March 23 Opinion further held) that, because these Agreements could be enforced, Pushpin's actions to enforce them were not unfair acts under the ICFA.[9] Plaintiffs' motion to reconsider that ruling is, therefore, denied as well.

---

[8] *See also APV N. Am., Inc. v. Trans Indus. Dev. Corp.*, No. 5:07-CV-346 (CAR), 2009 WL 3190423, at *7 M.D. Ga. Sept. 30, 2009) (under Illinois law, "conflict between the language of a guaranty and the representative capacity of the signatory thereto creates a fact question" (citing *Addison State Bank*)).

[9] Contrary to Plaintiffs' suggestion, Dkt. 119 at 2, *Armbrister v. Pushpin* held no differently. *Armbrister* merely acknowledged that a ten-year statute of limitations

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs' Verified Motion to Supplement the Record with various orders and transcripts from their state court cases (Dkt. 106). And the Court has considered those materials (along with those submitted in Plaintiff's Second Verified Motion to Supplement the Record (Dkt. 120) which the Court previously denied without prejudice, *see* Dkt. 123) in connection with Plaintiffs' Motion for Reconsideration (Dkt. 111) of this Court's March 23, 2015 Opinion. Having considered all of those materials, however, Plaintiffs' Motion for Reconsideration is nonetheless denied.

Dated: August 6, 2015

Charles P. Kocoras
United States District Judge

---

applies to "true guarantees," and that a misrepresentation to plaintiffs "that their debts were not time-barred, when they in fact were . . . ***could amount*** to a deceptive practice under the ICFA." *Armbrister*, 896 F. Supp. 2d at 756 (emphasis added). *Armbrister* did not blanketly hold (nor could it) that the plaintiffs' guarantees were unenforceable merely because they alleged that the same party both incurred the principal debt and guarantied it, since Illinois law plainly requires that dispute to be resolved by a trier of fact. *See supra* note 8 and accompanying text.