CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-2771

MICHAEL B. JOHNSON, *et al.*, on behalf of themselves and all others similarly situated,

                    *Plaintiffs-Appellants*,

*v.*

PUSHPIN HOLDINGS, LLC, *et al.*,

                    *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 7468 — **Charles P. Kocoras**, *Judge.*

_____

ARGUED MARCH 30, 2016 — DECIDED MAY 6, 2016

_____

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. This class-action suit, before us for the second time, had been filed in an Illinois state court and accused Pushpin Holdings, a debt collector (along with owners and affiliates of Pushpin unnecessary to discuss separately—for simplicity we'll pretend that Pushpin is the only defendant), of having violated the Illinois Consumer Fraud

and Deceptive Business Practices Act, and committed related torts, all in the course of attempting to collect debts in Illinois. Pushpin removed the case to federal district court under the provision of the Class Action Fairness Act of 2005 that authorizes such removal if (among other requirements; the only other one relevant to this case is discussed in the next paragraph) the amount in controversy exceeds $5 million. 28 U.S.C. §§ 1453(b), 1332(d)(2), (6). The district judge remanded the case to the state court on the ground that the plaintiffs (who were resisting removal) had established that the amount in controversy fell below the removal threshold because it would be impossible for the class to establish a right to damages of more than $5 million.

We reversed the district judge's order and remanded the case, holding not that the defendants had shown that the amount in controversy exceeded the $5 million threshold but that the issue required further consideration. *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014). On remand the district judge, reversing his earlier ruling, ruled that the amount in controversy did exceed the threshold, because Pushpin had already obtained judgments totaling $1.3 million that the plaintiffs wished to recoup and punitive damages equal to nine times that amount were also a possibility. But the judge later dismissed the suit on the merits for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and the plaintiffs have again appealed.

Before taking up the merits, we need to consider another possible hurdle to federal jurisdiction besides amount in controversy—namely that federal courts must decline to take jurisdiction of a class action if more than two-thirds of the members of the class "are citizens of the State in which

Case: 1:13-cv-07468 Document #: 143 Filed: 05/31/16 Page 3 of 8 PageID #:1863
Case: 15-2771   Document: 00712368270   Filed: 05/31/2016   Pages: 8

No. 15-2771 3

the action was originally filed," 28 U.S.C. § 1332(d)(4)(A)(i)(I), which of course is Illinois. There are more than 3000 class members—the exact number is unknown—and their citizenship is not in the record. But the parties agree that far fewer than 2000, hence far fewer than two-thirds of 3000, are citizens of Illinois. Indeed the class argues that Pushpin's debt-collection actions in Illinois are focused on persons who do not reside in Illinois, to discourage them from defending against Pushpin's debt claims because they would have to travel to Illinois from their home state to defend against Pushpin. Pushpin itself admits that fewer than 100 class members are Illinois citizens. So there is jurisdiction.

Coming at last to the merits, we need first to fill in a bit of background. In the early 2000s CIT, a large finance company, leased credit-card processing machines to both firms and individuals. The leases describe themselves as business rather than consumer contracts and contain a forum-selection clause that requires any disputes over the contracts to be litigated in Cook County, Illinois and governed by Illinois law. Each lease also requires the execution of a personal guaranty, whether by the lessee, an agent of the lessee, or someone else, of the payments required by the lease.

CIT assigned most of the leases to a company that in turn assigned them to Pushpin, which between 2010 and 2014 filed, in reliance on the forum-selection clause, suits in small-claims courts in Cook County against more than 3000 of the guarantors of leases that the lessees had defaulted on. Those 3000 are the members of the class.

The class argues that in invoking the forum-selection clause Pushpin was hoping to induce default judgments by

Case: 1:13-cv-07468 Document #: 143 Filed: 05/31/16 Page 4 of 8 PageID #:1864
Case: 15-2771 Document: 00712768270 Filed: 05/06/2016 Pages: 8

4 No. 15-2771

members of the class, the vast majority of whom live outside of Illinois and so would find it inconvenient to defend given the low stakes, most being below $5000 and many below $3000—for remember that Pushpin sued in small-claims courts. Indeed the class argues plausibly that the cost of defending against a suit by Pushpin would usually exceed the amount of the claim. But the legality of the forum-selection clauses is not challenged. Nor is there or should there be a rule that forbids bringing a suit just because the cost of defending against it is likely to exceed the claim. For then just by committing themselves to spend heavily on the legal defense to any small-claims suit brought against them, potential defendants could insulate themselves from liability for small claims.

The class further contends that Pushpin violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, by among other things failing to register as a debt collection agency, as required by the Illinois Collection Agency Act, 225 ILCS 425/4. But when Pushpin filed its suits the Act required registration only by collectors of consumer as distinct from commercial debt. Compare 225 ILCS 425/2 (2008) and 425/2 (2013), with 425/2 (2016). And even if Pushpin had been required to register, its failure to do so would not have invalidated the final judgments that it had obtained in the suits it brought. *LVNV Funding, LLC v. Trice*, 32 N.E.3d 553, 563 (Ill. 2015).

Alternatively the class argues that Pushpin violated the Illinois consumer fraud statute by suing for the $3000 or so owed on each lease even though the credit-card processing machines that were leased were worth only $250 apiece. But if the leases were overpriced, Pushpin was not responsible. It

Case: 1:13-cv-07468 Document #: 143 Filed: 05/31/16 Page 5 of 8 PageID #:1865
Case: 15-2771 Document: 00712368270 Filed: 05/31/2016 Pages: 8

No. 15-2771 5

had not leased the machines to anyone or determined any lease payments. It was merely a subassignee of CIT and as such the enforcer of contracts between CIT and the lessees and guarantors.

Invoking both the Illinois statute of limitations for enforcing a lease contract and the doctrine of laches, the class argues that Pushpin waited too long to sue the guarantors. But the Illinois statute of limitations applicable to written guaranties is 10 years, 735 ILCS 5/13-206, even though the statute of limitations for suits to collect the underlying debt (the debt that the guarantor promises to repay if the debtor doesn't) is shorter; in this case it was 4 years. See 810 ILCS 5/2-725; *Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 755–56 (N.D. Ill. 2012). Pushpin sued within the 10-year period.

As for laches—an equitable doctrine invoked by the class though its usual role is as a defense to equitable suits, see, e.g., *Nature Conservancy v. Wilder Corp. of Delaware*, 656 F.3d 646, 649–51 (7th Cir. 2011) (Illinois law), which Pushpin's were not—requires that the plaintiff be shown to not have been diligent in suing and by that lack of diligence to have harmed the defendant. There is no indication of either fault in this case—no basis, for example, for thinking that if only the members of the class had been sued a year or two or three earlier they would have had a stronger defense.

There is no basis for the further argument of the class that a guaranty is unenforceable if the guarantor is the same person as the lessee. Or for its argument (its arguments are inexhaustible) that since many of the lessees of the credit-card processing machines were corporations that had been dissolved before Pushpin filed its suits, there were few

proper defendants. Usually the guarantor of debts of a corporation is excused from having to make good on the guaranty if the corporation has been dissolved and its survival period (the period after dissolution in which a claim against a dissolved corporation can still be brought) has expired before the filing of a suit to enforce the guaranty. *Riley Acquisitions, Inc. v. Drexler*, 946 N.E.2d 957, 964–65 (Ill. App. 2011). But there is no indication that any of the lessees' survival periods had expired before Pushpin filed its small-claims suits. Some, it is true, expire after five years, which is the survival period for Illinois corporations. 805 ILCS 5/12.80; *Perry v. Western Motor Car Co.*, 279 Ill. App. 195, 202–03 (1935). But the class has not alleged that any of the lessees were dissolved Illinois corporations or that the survival periods of any of the non-Illinois corporations, periods governed by the laws of other states, had expired under their states' statutes.

The class alleges that the guarantors' signatures were forged on several of the guaranties and that the signatures of the lessees were forged on the corresponding leases. Forgery is a form of fraud, however, and fraud alleged in a suit in a federal court must be pleaded with particularity, Fed. R. Civ. P. 9(b), which the plaintiffs haven't done. Furthermore, what the class calls "forgeries" may have been authentic signatures by the lessees' officers or other employees.

The plaintiffs have still other claims, such as abuse of process and malicious prosecution. Those claims have no merit either, for reasons well explained by Judge Kocoras and unnecessary for us to repeat.

So the plaintiffs must lose. But we want to remark in closing two features of the case that we find troubling, though there is nothing we can do about them. The first is the en-

No. 15-2771 7

forceability of forum-selection clauses against unsophisticated signers of the clauses, which may describe many of the sole proprietors and other small businesses that leased credit-card processing machines from CIT. In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)—a much-criticized decision (see, e.g., Linda S. Mullenix, "*Carnival Cruise Lines, Inc. v. Shute*: The Titanic of Worst Decisions," 12 *Nevada Law Journal* 549 (2012)), the Supreme Court upheld a forum-selection clause printed on the "contract" pages attached to a cruise ticket. The clause had not been negotiated but simply imposed by the cruise line on the passengers, who were unlikely to appreciate its significance—the prospect of bringing a lawsuit against the line was not something many passengers would have been thinking about when they bought their tickets. The same may be true in this case with regard to the individuals and small businesses that leased the credit-card processing machines. But in light of *Carnival*, and considering that most lessees of credit-card processing machines lease them for use in business, a defense of unconscionability to the enforcement of the leases and the guaranties would be unlikely to succeed. And even if it were possible within the compass of existing law to invalidate the clauses in a case such as this, the class has challenged the forum-selection clauses only on the ground that they are an inconvenience to nonresidents of Cook County, Illinois, the selected forum. *Any* forum-selection clause will be an inconvenience to a nonresident signer of the contract containing the clause, so that the challenge by the class amounts to urging a blanket prohibition of such clauses, which goes too far.

Our other concern is with the relation of debtor to guarantor. Pushpin sued the guarantors rather than the debtors. Suppose it had said to a debtor, "we'll not sue you if you

Case: 1:13-cv-07468 Document #: 143 Filed: 05/31/16 Page 8 of 8 PageID #:1868
Case: 15-2771  Document: 00712768270  Filed: 05/31/2016  Pages: 8

8 No. 15-2771

pay us a modest fraction of the debt you owe us," and the debtor had agreed and Pushpin had then sued the guarantor for the entire amount of the debt, as that would be the amount of the guaranty. If as is often the case debtor and guarantor are one and the same person, Pushpin would be unlikely to obtain repayment of even a small part of the debt plus the full amount of the guaranty, as the sum would exceed the debt. But the debtor and guarantor might be different—the debtor might be a firm and the guarantor an officer of the firm, or an insurance company. Then there would be a risk of an excess recovery by Pushpin if it sued both. We don't know whether this was a feature of any of the 3000 claims that Pushpin filed against the guarantors, but it is a possibility that debtors and their guarantors should be on the lookout for in future cases. But it has not been made an issue in this case.

The judgment of the district court dismissing the complaint with prejudice is

AFFIRMED.